UNITED STATES of America, Appellee,

v.

Eddie SMITH, Jr., Appellant.

No. 80–1397.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1980.

Decided Nov. 26, 1980.

H. Carl Runge, Jr., Collinsville, Ill., for appellant Eddie Smith, Jr.

Robert T. Haar, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before STEPHENSON and HENLEY, Circuit Judges, and HUNTER,* District Judge.

STEPHENSON, Circuit Judge.

Eddie Smith, Jr. appeals from a jury verdict of the United States District Court for the Eastern District of Missouri[1] convicting him of possession of drugs with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On appeal he claims the trial court erred: (1) in denying his motion to suppress evidence obtained subsequent to his warrantless arrest, which he claims was in violation of his constitutional rights; (2) in admitting a confession made after *Miranda* warnings, but following the illegal arrest; (3) in failing to conduct a post–search hearing on the veracity of the affidavits in support of the search warrant; (4) in giving instructions to the jury not requiring them to find the exact amount of cocaine or marijuana involved; and (5) in denying probation and imposing the maximum sentence. We affirm the conviction.

## FACTUAL BACKGROUND

On December 17, 1979, a police detective/informant advised Detectives Thomas Murphy and Kenneth Dye of the St. Louis County Police Department that the occupant of 12051 Rosemist in Spanish Lake, Missouri, a man with the first name "Jerry," dealt heavily in cocaine, marijuana and other drugs. This informant had recently made four or five introductions of police officers to dealers in illegal drugs.

This information was corroborated by a tip from Detective Harry Seper of the Belleville, Illinois police department. Seper had acquired his information from an informant, but provided no information about the informant. The information was that a "Jerry Juenger," who lived at 12056 Rose Valley in Spanish Lake, had "a very fast moving" marijuana operation and that drugs would come in during the day and would be gone that evening. Juenger was described as a white male, thirty–one to thirty–two years old and the owner of a black Corvette. When the officers checked with the utility and phone companies the Rosemist, not the Rose Valley, address was found to be correct. The Drug Enforcement Administration also informed Murphy and Dye that Juenger had been spotted during a number of its surveillances in the Collinsville, Illinois area.

On January 16, 1980, the informant who had originally provided information about Juenger, phoned Dye and provided him with additional information. The informant said that between 7:30 p. m. and 8:30 p. m. on that evening a black over brown Oldsmobile four–door sedan would enter the garage at 12051 Rosemist and the garage door would be closed behind it. Within fifteen minutes it would leave the garage loaded with marijuana.

That night Detectives Dye, Murphy, and Moniyhan positioned themselves in a van so they could observe the front of the residence at 12051 Rosemist. The garage door was open and a black Corvette was parked in front. At approximately 8:15 p. m., the lights in the garage went on and a black over brown Oldsmobile four–door sedan entered the garage. The garage door immediately closed. Approximately five minutes later, a green Chrysler Cordoba pulled into the driveway. A white female exited from the driver's side and walked to the front door of the residence as the front porch light came on. A white male alighted from the passenger side of the Cordoba. He was carrying a large green trash bag, stuffed to a three–foot circumference. He walked around the rear of the Cordoba and sprinted to the front door.

---

* The Honorable Elmo B. Hunter, sitting by designation on this panel, is now Chief Judge of the United States District Court for the Western District of Missouri.

1. The Honorable James H. Meredith, United States Senior Judge for the Eastern District of Missouri presiding.

Detective Murphy testified that at least fifty times before, he had seen bags of this nature used to transport controlled substances in bulk.

After the occupants of the Cordoba had entered the house, the detectives contacted Officer Tiemann who was patrolling the area in a prowl car. The detectives radioed Tiemann to be prepared to stop a car for them if they needed help. Approximately ten minutes later, the female and male returned to the Cordoba and another man entered the Corvette parked in the street.

The garage door opened, the black over brown Oldsmobile quickly exited and proceeded north on Rosemist. The Oldsmobile had been in the garage approximately fifteen minutes. The detectives followed the Oldsmobile in their van. They notified Officer Tiemann who followed the van. All three vehicles turned onto Highway 367.

Officer Tiemann followed directly behind the Oldsmobile. The Oldsmobile was travelling at a very slow speed—approximately twenty miles per hour. Officer Tiemann offered to stop the Oldsmobile on an impeding traffic charge, but the detectives wanted it to proceed.

The Oldsmobile turned onto Highway 270. As the car neared Illinois, the detectives advised Tiemann to stop the Oldsmobile near the intersection of Highway 270 and Bellefontaine. The detectives pulled the van off the highway at Bellefontaine, but never lost sight of the Oldsmobile or Officer Tiemann's patrol car. The van parked approximately fifty feet from the Oldsmobile.

Officer Tiemann approached the Oldsmobile and another marked car arrived to assist him. Appellant, Eddie Smith, was the driver and the only occupant of the Oldsmobile.

Officer Tiemann radioed the detectives that he did not see any drugs—he saw only a briefcase in the front seat—and asked what he should do. Detectives Murphy and Dye told him to wait and that they would come to his assistance.

Detective Murphy testified the intention was to arrest Smith for possession of a controlled substance. Upon reaching the Oldsmobile, Murphy expressed this intention to the other officers. Sgt. Jones, a supervisor who had arrived on the scene, said that he thought the Vehicle Identification Number (VIN) had been altered and said "why don't you just go ahead and let us make the arrest?" Detectives Dye and Murphy acquiesced. Murphy testified that the VIN appeared to "have some scratches on it as if someone was fooling around with it or tampering with it." However, Murphy conceded that he had no expertise in this area.

Defendant Smith was informed of his *Miranda* rights and of the arrest for an altered VIN. He was also advised that he would be questioned about some drugs. Smith was taken into custody and the Oldsmobile was ultimately towed to police headquarters.

At approximately 1:15 a. m. on January 17, 1980, Detectives Dye and Murphy again informed Smith of his rights. He said he understood and agreed to talk, but he refused to sign the Warning and Waiver Form. During the interview he admitted that there were one hundred three pounds of marijuana in the trunk of the car and an ounce of cocaine in the briefcase. The defendant agreed to cooperate, provided some intelligence information, and made phone calls to Jerry Juenger at the request of Detectives Dye and Murphy.

Later that morning, Detectives Dye and Murphy swore out affidavits in support of a warrant to search the Oldsmobile and the brown briefcase that had been on the front seat of that automobile. Those affidavits stated that a reliable confidential informant (the police detective/informant), who had made four undercover introductions in the last sixty days, provided the tip that a black/brown Oldsmobile would enter the garage at 12051 Rosemist between 7:30 p. m. and 8:30 p. m. on January 16, 1980; that the garage door would close behind it and it

would be loaded with marijuana; and that it would depart fifteen minutes later.

The affidavits stated that a vehicle fitting this description was indeed seen entering the garage at 12051 Rosemist at the prescribed time. They also stated that two reliable sources identified the occupant of the residence at 12051 Rosemist as an individual dealing in large quantities of marijuana and cocaine. The affidavits also relate that Smith, after his arrest, said he had one hundred pounds of marijuana in the trunk of the Oldsmobile and one ounce of cocaine in the briefcase that had been in the front seat of the car. Judge Patrick Clifford issued the search warrant and upon its execution Detectives Dye and Murphy found approximately 46.8 kilograms of marijuana in the car and 29.7 grams of cocaine in the briefcase.

On February 28, 1980, the Grand Jury returned a two-count indictment against defendant, charging two distinct violations of 21 U.S.C. § 841(a)(1). Count I charged Smith with possession with intent to distribute 46.8 kilograms of marijuana and Count II charged Smith with possession with intent to distribute 29.7 grams of cocaine.

On April 22, 1980, defendant Smith, through his counsel, filed motions for disclosure of the informant, to suppress physical evidence, and to suppress statements. Judge Meredith denied these motions.

The trial was held on April 29, 1980. Defense counsel sought to have the marijuana and cocaine suppressed because, Smith alleged, it had been illegally seized. He also contested the admission of his confession and the court's failure to conduct a post-search hearing to examine the veracity of the affidavits submitted to obtain the search warrant. He also objected to the jury instruction which said the jury was not required to determine whether the quantity of drugs was as stated in the indictment.

A guilty verdict was returned and the defendant was sentenced to a term of five years imprisonment plus a special five-year parole term on Count I, and a term of fifteen years imprisonment plus the special five-year parole term on Count II. Both counts were to run concurrently.

## DISCUSSION

*Suppression of Evidence*

Appellant alleges that the cocaine and marijuana seized during the search of the car must be suppressed because the pretextual arrest for an altered VIN tainted the entire search and arrest.

In *United States v. Hollman*, 541 F.2d 196 (8th Cir.1976), we held that if there is probable cause to arrest and search a subject the arrest and search is lawful even though the initial search and arrest is made on pretextual grounds. *Id.* at 198–99. Thus, if there was probable cause to arrest and search Smith on the drug charges, the evidence was properly admitted. *See Klingler v. United States*, 409 F.2d 299, 303–05 (8th Cir.1969).

In determining whether the officers had probable cause to arrest Smith, we note that it is proper for the officers to rely on an informant's tip if the tip meets two criteria. First, the tip must include some of the underlying circumstances showing the basis of the informant's information. Second, there must be a disclosure of the reasons for the officer's belief in the credibility of the informant. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964); *United States v. Muckenthaler*, 584 F.2d 240, 244 (8th Cir.1978).

The officers testified and the affidavits for a search warrant stated that the informant had been reliable on at least four prior occasions. This satisfies the reliability prong of the *Aguilar* test.

Even though the informant's tip may not disclose the underlying circumstances showing the basis of the information, a tip can satisfy the second prong of

the *Aguilar* test if it describes the activity in sufficient detail that it can be inferred that this is more than a mere rumor or based on the subject's reputation. *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).

■■ We conclude that the trial court did not err in finding that the description of the car, the times given for the events that occurred, the description of the actors, and the precise narrative of what would happen satisfies this test. *Id. See United States v. Landis*, 632 F.2d 66 (8th Cir.1980); *United States v. Brown*, 584 F.2d 252, 255–57 (8th Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Muckenthaler, supra*, 584 F.2d at 244–46; *United States v. Graham*, 548 F.2d 1302, 1307 (8th Cir.1977).

We conclude that there was probable cause for the arrest. Also, this evidence as included in the affidavits provided probable cause for the issuance of the search warrant. Thus, the district court properly admitted the evidence.

*Confession*

■ Because the arrest was proper and the defendant's *Miranda* rights were properly given, the appellant's allegation that the confession was inadmissible as "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 477–78, 83 S.Ct. 407, 411–412, 9 L.Ed.2d 441 (1963), must fail.

*Post–Search Hearing*

■ Furthermore, the district court did not err in failing to hold a post–search hearing to examine the veracity of the affidavits submitted in support of the request for a search warrant. In order to justify such a hearing, the challenger must make more than a merely conclusional statement attacking the sufficiency of the affidavits. In *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–2685, 57 L.Ed.2d 667 (1978), the court stated:

There is, of course, a presumption of validity with respect to the affidavit sup-

porting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross–examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

Such an allegation has not been made in the present case. Defendant alleges, at most, that the information received from an initial informant was based upon hearsay from a third party. He makes no allegation of deliberate falsehood or of reckless disregard for the truth. As previously indicated in the factual review of this opinion and the affidavits in support of the search warrant, the informant's information was in sufficient detail to satisfy the *Spinelli* test. Therefore, the district court did not err in not holding a post–search hearing.

*Instruction*

The court instructed the jury that:

In the Indictment, it is alleged that a particular amount of quantity of marijuana and cocaine was involved. The evidence in the case need not establish that the amount or quantity of marijuana and

cocaine was as alleged in the Indictment, but only that marijuana and cocaine was in fact the subject of the acts charged in the Indictment.

*See* 2 Devitt & Blackmar, Federal Jury Practice and Instructions § 58.05 (1976).

Appellant contends the instruction was erroneous because the amount of marijuana or cocaine is relevant and material to whether or not appellant intended to deliver for sale, or retain for personal use.

■ Appellant's challenge to the jury instruction is without merit. The instruction is only intended to warn the jury not to be concerned with the exact quantity of marijuana or cocaine. In light of the fact that the district court instructed on the elements of this offense, including possession "with a specific intent to distribute," and the need to find specific intent, we reject appellant's challenge. Furthermore, the court submitted the lesser included offense of "possession" which does not require intent to distribute.

*Sentence*

■ We also reject appellant's argument that denial of probation and imposition of the maximum sentence constituted a deprivation of constitutional rights, cruel and unusual punishment, and an abuse of discretion. The sentence imposed was within the statutory limits. The district court did not "manifestly or grossly abuse its discretion" in sentencing appellant to concurrent five–year and fifteen–year sentences plus five–year special parole terms. *United States v. Hawkins*, 601 F. 2d 368 (8th Cir.1979); *see Woosley v. United States*, 478 F.2d 139, 147 (8th Cir.1973).

## CONCLUSION

After careful consideration of appellant's numerous contentions, we are satisfied that he received a fair trial and his conviction must be affirmed.

Affirmed.