UNITED STATES of America, Appellee,

v.

MARINO, Alfonso, Appellant.

No. 82–1064.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6),
June 21, 1982.

Decided July 7, 1982.

As Amended July 12, 1982.

---

Joseph P. Zawrotny, Joseph P. Zawrotny, P.C., Philadelphia, Pa., for appellant.

Mary C. Spearing, Philadelphia, Pa., for appellee.

Before GARTH and BECKER, Circuit Judges and MUIR,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Alfonso Marino was convicted and sentenced on three counts of unlawful possession of firearms in violation of 18 U.S.C. App. § 1202(a). On appeal, Marino raises two claims. First, he argues that the warrant authorizing the search which led to the discovery of three firearms in his home was defective under the Supreme Court's decisions in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Therefore, he contends, the district court erred in refusing to suppress all physical evidence seized as a result of the search. Second, Marino argues that the simultaneous possession of three firearms in his home constituted a single, undifferentiated offense under 18 U.S.C. App. § 1202(a). Thus, he asserts, it was improper to convict and sentence him on three separate counts.

We reject Marino's first contention and hold that the district court properly determined that the search warrant satisfied the *Aguilar-Spinelli* requirements. We agree with Marino's second contention, however, and we note that the Government does not contest Marino's argument that the simultaneous possession of the three firearms in his home constituted a single offense under section 1202(a), and not three separate offenses. Accordingly, though we affirm the district court's holding as to the adequacy of the search warrant, we will vacate the sentences and remand the case to the district court for the sole purpose of resentencing.

## I.

On July 2, 1981, the Pennsylvania State Police, in conjunction with the Philadelphia Police Department, obtained a warrant authorizing a search of Marino's home. The warrant specified as items to be searched for and seized "Stolen Property such as office equipment, Precious Metals, Guns, and monies and Records pertaining to these activities. Also Methamphetamine[,] a Schedule II Controlled Substance." Appendix at 4. The search warrant was issued on the basis of an affidavit supplied by Kenneth K. Anthony, a Pennsylvania State Police Officer, and Lt. James Potocnak, a Philadelphia Police Officer. The affidavit stated that Lt. Potocnak had spoken the day before (on July 1, 1981) with a police informant "who in the last three months had given police information which had led to the arrest of three persons for serious crimes and the securing of evidence against those persons arrested." Appendix at 6. Noting that the informant "has extensive contact with organized crime figures," the affidavit stated that on June 30th and July 1st, 1981, the informant had been inside Marino's house. According to the affidavit, the informant had told the police that while present in Marino's house, he had overheard Marino negotiate with professional burglars over the price of stolen items, including jewelry, bonds, credit cards, silverware, precious metals, office equipment, and guns. The informant also claimed that Marino kept guns near him or on his person while at home. Finally, the affidavit stated that the informant had told the police that he had personally observed Marino exchange drugs and money for stolen goods. *See* Appendix at 4–6.

The search was conducted on July 2, 1981, with Marino present in his house. In the course of the search, the police found a loaded pistol in the nightstand adjacent to Marino's bed, as well as two rifles in a closet next to the bedroom. On the basis of

* The Honorable Malcolm Muir, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

this evidence a federal grand jury charged Marino on October 6, 1981, with a violation of 18 U.S.C. App. § 1202(a)(1).[1] The indictment consisted of three counts charging that Marino, having been convicted of a felony, had on July 2, 1981, possessed a Browning 9 millimeter semi-automatic pistol (Count One), a Marlin .35 caliber rifle (Count Two), and a Remington .270 caliber rifle (Count Three).

Marino filed pretrial motions requesting that the search warrant be controverted, that physical evidence be suppressed, that statements and identifications made as a result of the search be suppressed, and that the informant be produced. In an order of November 20, 1981, the district court denied the motion in all respects except for one; the motion to suppress Marino's statements at the time of his arrest was granted. *See* Appendix at 12.

On November 30, 1981, a jury was impaneled and on December 1, 1981, Marino was found guilty on all three counts. After he was given a two-year sentence on Count One, a two-year sentence on Count Two consecutive to the sentence on Count One, and a five-year probationary term on Count Three, consecutive to the first two counts, *see* Appendix at 20, Marino filed a timely notice of appeal.

## II.

■ As we have noted, Marino asserts that the district court erred in holding that the affidavit supporting the issuance of the search warrant provided a sufficient basis upon which to determine probable cause. We find this contention to be without merit.

The affidavit related in detail extensive information concerning the purchase of stolen goods, traffic in illicit drugs, and possession of illegal firearms, all in Marino's house. It is therefore clear that the information in the affidavit, if accurate, was sufficient to establish probable cause for the search, and Marino does not argue to the contrary. Rather, he argues that there was no basis for concluding that the information given by the informant was indeed accurate and credible. If there was no basis for concluding that the information was accurate, then that information could not, of course, serve as a basis for a determination of probable cause.

Because the affidavit was based on an informant's tip, the requirements laid out by the Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), must guide any inquiry into the sufficiency of the basis for determining probable cause. As we noted in *United States v. Bush*, 647 F.2d 357, 362 (3d Cir. 1981),

[i]n *Aguilar*, the Court held that probable cause may be established on the basis of hearsay—for example, by an affidavit of a law enforcement officer that relies entirely on an informant's tip. 378 U.S. at 114, 84 S.Ct. at 1513. However, to ensure that it is the magistrate, not the informant or the officer, who decides whether probable cause exists, the *Aguilar* Court held that such a hearsay affidavit must meet a two-pronged test. First, the affidavit must contain facts sufficient to support the finding that the informant based his conclusions on adequate knowledge. Secondly, the affidavit must recite facts, not mere conclusory assertions of the officer, which demonstrate the credibility of the informant. The magistrate may base probable cause for a warrant exclusively on an informant's tip only when facts demonstrating both the informant's basis of knowledge and his credibility are specified in the officer's affidavit. *Spinelli, supra*, 393 U.S. at 412, 89 S.Ct. at 587.

---

1. That statute provides that:
    [a]ny person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... and who receives, possesses, or transports in commerce or affecting commerce ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

We think it beyond cavil that the affidavit in this case fully satisfied the *Aguilar-Spinelli* test.

█ With respect to the requirement that the affidavit include facts demonstrating the credibility of the informant, we note that the affidavit explicitly stated that the informant had in the past three months "given [the] police information which had led to the arrest of three persons for serious crimes and the securing of evidence against those persons arrested." A history of accurate tips, though not essential to demonstrating an informant's credibility, *see* 647 F.2d at 362–63, provides a strong basis for inferring that the present tip is credible and accurate. *See, e.g., United States v. Smith,* 635 F.2d 1329, 1333 (8th Cir. 1980). It is not necessary, moreover, that the informant's tips have led to *convictions;* a prior history of tips that result in arrests and in the securing of information and evidence can provide a sufficient basis for concluding that the information is reliable. *See generally* 1 W. LaFave, Search and Seizure, § 3.3(b)(1978). Thus we hold that the affidavit in this case provided an amply sufficient basis for concluding that the informant was reliable.

█ The other, "[a]rguably ... more critical" prong of the *Aguilar-Spinelli* test, *United States v. Bush, supra,* 647 F.2d at 363, is, as we have noted, the requirement that the affidavit contain facts sufficient to demonstrate that "the informant based his conclusions on adequate knowledge," *id.* at 362. While it is difficult to state with precision a general standard for determining whether the facts specified in the affidavit are sufficient, we think it well-established that when the facts in the affidavit "demonstrate that the informant came upon his knowledge through direct observation or an equally reliable means," *id.* at 364, this prong of the *Aguilar-Spinelli* test is satisfied. In the present case, the affidavit specifically stated that the informant had been present in Marino's home in the

two preceding days, and had personally overheard Marino negotiate with others over the price of stolen items such as jewelry, silverware, and guns. The affidavit also stated that Marino had told the informant that he was using "the Feds" to protect him from arrest by the local police for his illegal activities. Finally, the affidavit stated that on June 30 and July 1, 1981, the informant personally observed Marino exchange cash and methamphetamine for stolen items. In light of these highly specific statements about the informant's personal knowledge of the facts he related to the police, we fail to understand how the affidavit could possibly be deemed "conclusory," as Marino argues. *See* Appellant's Brief at 12. Nor can we agree with Marino that the police "had a duty to corroborate the information" in the affidavit, *id.* at 11; corroboration of details is necessary "*in the absence* of a statement detailing the manner in which the information was gathered." *Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589 (emphasis supplied). *See also* 1 W. La-Fave, *supra,* § 3.3(d), at 536–37. Here, the affidavit did contain such a detailed statement specifying the manner in which the information was gathered, and that statement was sufficient to fulfill the purpose of this prong of the *Aguilar-Spinelli* test: to ensure that the "informant is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. at 416, 89 S.Ct. at 589.

Thus we reject the argument that the affidavit in this case provided an insufficient basis for determining probable cause, and we will affirm the district court's order of November 20, 1981, refusing to suppress all physical evidence seized during the search.[2]

### III.

█ Marino's second contention is more substantial; it raises the question "whether the language of § 1202(a)(1),

---

**2.** The other aspects of that order—refusing to require production of the informant, and suppressing statements made by Marino at the time of his arrest—are not contested by either Marino or the Government in this appeal, and so we do not pass on them.

defining as a criminal offense the receipt, possession, or transportation in commerce by a previously convicted felon of 'any firearm,' allows the government to treat each of several firearms simultaneously possessed as a separate unit of prosecution." *United States v. Kinsley*, 518 F.2d 665, 666 (8th Cir. 1975).[3] We agree with all the other Circuits which have addressed this question, and like them we hold that the simultaneous possession of several firearms by a convicted felon constitutes a single offense under section 1202(a).

In *United States v. Kinsley, supra,* the Eighth Circuit undertook a thorough analysis of the statutory language, the legislative history, and the general statutory scheme relating to section 1202(a). Underpinning the court's analysis was a recognition of the general rule of construction that "[w]hen Congress fails to set the unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused." *Id.* at 666.[4] Looking to the specific language of section 1202(a), the court held that it is ambiguous because it "defines the object of the offense as 'any firearm,'" rather than as "a firearm." *Id.* at 668.[5] In many other instances in which the word "any" was used in a statutory definition of the unit of prosecution, the court observed, the statute has been found ambiguous. *E.g., Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (under Mann Act, which prohibits interstate transportation of "any woman or girl" for immoral purposes, simultaneous interstate transportation of two or more women constitutes one offense). *See generally* 518 F.2d at 666–69.

Finding the language of the statute ambiguous, the *Kinsley* court next examined the legislative history of section 1202(a), and concluded that it provided no clarification of the ambiguity in the statutory language: "[t]he allowable unit of prosecution under the statute is simply not addressed" in the legislative history. *Id.* at 669.[6] Finally, the court examined "the congressional intent as manifested in the overall legislative plan," *id.* at 670, in search of clarification of the ambiguity. The court acknowledged that the relatively short maximum term of imprisonment under section 1202(a)—two years—might indicate "a congressional scheme providing for successively more severe punishment as the number of weapons possessed increases." *Id.* Nevertheless, it refused to infer from the length of the prison term alone that each firearm, simultaneously possessed, constitutes a separate unit of prosecution:

> [I]t is not self-evident that the two-year term was designed so as to permit greater sentence liability in multiple weapons cases, and the argument ultimately rests on an assumption as to congressional intent. The rule of lenity enunciated in *Bell* was meant to preclude the substitution of assumptions for an undeclared congressional intent.

*Id.* Thus, finding that the statutory language contained an ambiguity which neither the legislative history nor the overall statutory scheme resolved, the court resolved the ambiguity in favor of the defendant and held that the simultaneous possession of two or more firearms constitutes a single offense under section 1202(a).

---

**3.** Apparently Marino did not raise this issue before the district court. Nevertheless, "if sentences are imposed on each count of [a] multiplicious indictment the defendant is not forced to serve the erroneous sentence because of any waiver." *United States v. Rosenbarger,* 536 F.2d 715, 722 (6th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977).

**4.** The court noted that this rule of construction "is founded on the dual considerations that criminal legislation must provide fair warning and that the legislature and not the courts should define criminal activity." 518 F.2d at 667.

**5.** As the court reasoned, the word "'any' may be said to fully encompass (i.e., not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." *Id.* at 667.

**6.** Indeed, as the Supreme Court has noted, "Title VII [which enacted § 1202] was a last-minute Senate amendment to the Omnibus Crime Control and Safe Streets Act. The Amendment was hastily passed, with little discussion, no hearings, and no report." *United States v. Bass,* 404 U.S. 336, 344, 92 S.Ct. 515, 520, 30 L.Ed.2d 488 (1971) (footnote omitted).

We have nothing to add to the Eighth Circuit's painstaking analysis of the interpretation of section 1202(a). The basic principle underlying *Kinsley*—that ambiguity in a criminal statute that cannot be clarified either by the legislative history or by inferences from the overall statutory scheme should be resolved in favor of the defendant—is a firmly established one. *See, e.g., Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). Moreover, it appears that every other Circuit that has addressed the question whether the simultaneous possession of multiple firearms constitutes but a single offense under section 1202(a) has answered that it does. *See United States v. Hodges*, 628 F.2d 350, 351 (5th Cir. 1980) ("It is well-established that the simultaneous, undifferentiated possession of multiple firearms constitutes only one offense under 18 U.S.C. App. § 1202(a)."); *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976) ("only one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places"), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Calhoun*, 510 F.2d 861, 869 (7th Cir. 1975) ("absent a showing that two firearms were stored or acquired at different times or

places, there is only one offense [under section 1202(a)], not two"), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1976).[7] Finally, though of course "a government concession of law is not binding on this court," *Government of Virgin Islands v. Josiah*, 641 F.2d 1103, 1107 n.1 (3d Cir. 1981), we note that that Government, apparently acknowledging the overwhelming support for the interpretation of section 1202(a) which Marino urges on this court, states that it "does not oppose a remand for the limited purpose of resentencing, with the district court treating the three counts as if they had merged." Appellee's Brief at 8.

We hold, therefore, that the simultaneous possession of two or more firearms constitutes a single offense under section 1202(a).[8]

## IV.

Accordingly, we will affirm the district court's order refusing to suppress physical evidence, but we will vacate the sentences on all three counts and remand the case to the district court for the limited purpose of resentencing Marino in accordance with this opinion.[9]

MUIR, District Judge, concurring and dissenting.

I join in Parts I and II of the Court's opinion. It was the burden of the United

---

7. It is significant, moreover, that a similar statute, 18 U.S.C. § 922, has been interpreted the same way. For example, under § 922(h), which makes it unlawful for certain specified persons "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," the simultaneous receipt of two or more firearms has been held to constitute a single offense. *United States v. Powers*, 572 F.2d 146 (8th Cir. 1978). *See also McFarland v. Pickett*, 469 F.2d 1277 (8th Cir. 1972) (per curiam) (same for § 922(j), which makes it unlawful to "receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition" in interstate commerce); *United States v. Carty*, 447 F.2d 964 (5th Cir. 1971) (same for § 922(i), which makes it unlawful for any person "to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition," knowing it to have been stolen).

8. A different question is posed when the Government presents evidence that the firearms were received or possessed at different times. *See, e.g., United States v. Bullock*, 615 F.2d 1082, 1086 (5th Cir.) (section 1202(a) "allows the government to treat each of several firearms not simultaneously received or possessed as separate units of prosecution"), *cert. denied*, 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980); *United States v. Killebrew*, 560 F.2d 729 (6th Cir. 1977). This issue is not before us in this case, and so we do not pass upon it.

9. There appears to be some divergence as to the appropriate disposition of an appeal once it has been determined that a defendant was erroneously convicted of multiple counts charging violations of § 1202(a). In *Kinsley*, the district court had sentenced the defendant to three consecutive two-year terms, and the Eighth Circuit "reverse[d] the judgments of the district court [on all counts] and remand[ed] for resen-

States to bring to the District Court's attention prior to sentencing that the counts had merged by reason of failure of proof and that a sentence on each of the three counts would be illegal. I doubt that any District Judges in this circuit would be aware of holdings to that effect in other circuits. Not only did the United States fail to bring this to the Court's attention but the United States does not even oppose re-sentencing when the issue is raised on appeal. In order to save the time of the District Judge and the expense involved in a resentencing, including that of transportation of the prisoner, I would follow the practice of the Sixth Circuit and vacate the convictions on Counts 2 and 3. I therefore respectfully dissent from the portion of the order which directs resentencing.

tencing in accordance with the principles set forth" in its opinion. 518 F.2d at 670. Similarly, in *Calhoun*, the district court had sentenced the defendant to one-year consecutive terms for each of two counts of violating § 1202(a); the Seventh Circuit remanded the case to "the trial court to combine [those two counts] into one Count, with resentencing on the combined Count, or to dismiss one, and resentence on the other." 510 F.2d at 870. In *Rosenbarger*, on the other hand, the defendant received an 18-month sentence on each of three counts, with the sentence on Counts One and Two to be served concurrently with each other (so that the total term of imprisonment was three years); rather than remanding for resentencing, the Sixth Circuit simply vacated the convictions on Counts Two and Three, leaving the 18-month sentence on Count One intact. 536 F.2d at 722.

We think that a remand for resentencing, rather than an order vacating the sentence on two of the three counts, is the appropriate disposition. *See generally United States v. Busic*, 639 F.2d 940 (3d Cir.), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Thus, we deem the procedure mandated in *Kinsley* and *Calhoun* to be preferable to the alternative procedure of simply vacating the sentences on Counts Two and Three.