**UNITED STATES of America**

v.

**Joseph Peter FRANKENBERRY,**
**Appellant.**

**No. 81–2854.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 18, 1982.

Decided Dec. 27, 1982.

240

Thomas I. Vanaskie (argued), Dilworth, Paxson, Kalish, Levy & Kauffman, Scranton, Pa., for appellant.

David Dart Queen, U.S. Atty., Barbara L. Kosik (argued), J. Andrew Smyser, Asst. U.S. Attys., Harrisburg, Pa., for appellee.

Before ALDISERT, ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

After a jury trial, Joseph Frankenberry was convicted on a four-count indictment. Count I charged a conspiracy to transport stolen goods in interstate commerce in violation of 18 U.S.C. § 371; Count II charged possession of a firearm, specifically a .45 caliber Star automatic handgun, by a convicted felon in violation of 18 U.S.C. §§ 922(h)(1) and 924(a); Count III charged possession of a firearm, specifically a .22 caliber Ruger revolver, by a convicted felon in violation of 18 U.S.C. §§ 922(h)(1) and 924(a); and Count IV charged possession of an unregistered firearm, a silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871. Frankenberry was sentenced to a five-year term of imprisonment on Count I; a five-year term of imprisonment on Count II, to run consecutively; a two-year term of imprisonment on Count III, to run consecutively; and a ten-year term of imprisonment on Count IV, ordered to run concurrently with the sentences imposed on Counts I and II. On appeal, Frankenberry claims that he was denied effective assistance of trial counsel, that the court erred in admitting evidence of threats of harm to witnesses and other individuals without cautionary instructions, that the court improperly denied his motion for a severance, and that he was improperly prosecuted and sentenced to consecutive prison terms for simultaneous possession of two handguns.

### I.

#### Facts

The facts as presented at trial are not in issue on this appeal and therefore will be only briefly summarized. The government presented sound recordings, videotapes, and testimony proving that Frankenberry, Charles Huey, Theodore Slagle, and John

Sullivan developed a plan to rob Temple Enterprises, Inc., a Philadelphia precious metals firm. Defendant involved Benjamin Wujs to assist in disposal of the metals in Ohio. On February 7, 1981, defendant, Slagle and Huey drove from Huey's home in Yoe, Pennsylvania, to Philadelphia to make plans and arrangements for the robbery. Huey wore sound recording equipment pursuant to an arrangement he had made with the government covering this and other crimes in which he was implicated. On route to the premises of Temple Enterprises, Huey met with Sullivan who related details of the layout of Temple Enterprises and its security devices. The defendant, Slagle and Huey then drove to Temple Enterprises where they examined the area. They discussed details of the planned robbery both there and during the trip back to Yoe.

On the day of the planned robbery, February 11, 1981, defendant, Huey and Slagle met in a Ramada Inn motel room in York, Pennsylvania rented by Huey and which had been equipped with audio and video recorders by the government. The three men discussed the robbery and assembled preparatory items, including firearms. They were arrested on leaving the motel. A search of Frankenberry by the arresting F.B.I. agents revealed that he carried a .45 caliber Star pistol and a .22 caliber Ruger pistol.

Slagle, Sullivan and Wujs were named as co-defendants with Frankenberry in Count I of the indictment directed to the conspiracy to transport stolen goods. Only defendant Frankenberry was named in the other counts. Slagle and Sullivan pleaded guilty. Defendant and Wujs were tried jointly. Wujs testified on his own behalf. Defendant chose not to. The jury failed to agree on a verdict as to Wujs and a mistrial was declared as to him.

## II.

### *Ineffective Assistance of Counsel*

We consider first Frankenberry's claim that he is entitled to a new trial because of ineffective assistance of counsel. In his brief, Frankenberry makes a systematic attack on the effectiveness of his trial counsel. In particular, he faults counsel for their failure to challenge the indictment for multiplicity, failure to seek to suppress recorded conversations and items of physical evidence seized from his home, failure to object to introduction of prejudicial photographs, abrupt and superficial cross-examination of witnesses, failure to request cautionary instructions with regard to evidence of other crimes, numerous miscellaneous errors and omissions at trial, and languid post-trial conduct with respect to the post-trial motions and sentencing. He claims that the totality of errors and omissions of his trial counsel, pervading the entire proceeding, constitutes a denial of effective assistance of counsel.

Surprisingly, the government has failed to contest the reviewability of the issue of ineffective assistance of counsel on direct appeal. Whatever the basis for the government's strategy, it is for this court to decide whether we will hear a claim of ineffective assistance of counsel on direct appeal. Sound prudential considerations require that we apply a consistent approach to this issue, and we believe it inappropriate to deviate from our practice merely because the government has chosen not to press the issue in a particular case.[1]

The recent precedent in this court is clear that as a general rule we will not consider ineffective assistance of counsel claims on direct appeal. *United States v. Sturm,* 671 F.2d 749, 750–51 (3d Cir.1982) (per curiam); *United States v. Jackson,* 649 F.2d 967, 973 (3d Cir.), *cert. denied,* 454 U.S. 871, 1034, 102 S.Ct. 341, 574, 70 L.Ed.2d 176, 479 (1981); *United States v. Rad-O-Lite of*

---

1. The government may have adopted this appellate strategy here because of its belief that defendant's claim could be easily dispatched with finality in light of what it characterizes as the "overwhelming and compelling" evidence of his guilt. The government suggests that it had an "airtight case" since it had a "motion picture, complete with sound, of the Appellant committing the offenses for which he was on trial." Government's Brief at 38.

*Philadelphia, Inc.,* 612 F.2d 740, 744 (3d Cir.1979); *United States v. Garcia,* 544 F.2d 681, 684 n. 1 (3d Cir.1976). We have preferred this practice so that the accused can raise the objection in a collateral proceeding under 28 U.S.C. § 2255 where the district court may develop an appropriate factual record. Defendant argues that in this case the ineffectiveness is so plain from the record that it can be reviewed by us in the first instance. A review of Frankenberry's objections to his trial counsel's conduct shows why our customary procedure should be followed in this case as well. For example, Frankenberry claims that trial counsel failed to vigorously cross-examine the government's witnesses. The government, however, suggests that this was part of trial counsel's cross-examination strategy in an effort to show defendant "had been set up". Trial counsel is entitled to a measure of latitude and discretion in the manner in which the trial is conducted. Assuming *arguendo* there was minimal cross-examination (and we expressly refrain from so characterizing the cross-examination) and that this followed from a tactical decision, a collateral proceeding will provide a forum in which a district court may ascertain the "nature and plausibility of any explanations [trial] counsel may have had for [such] a decision." *United States v. Sturm,* 671 F.2d at 751; *see Cerbo v. Fauver,* 616 F.2d 714 (3d Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 158, 66 L.Ed.2d 73 (1980) (counsel's affidavit sufficient to explain basis for tactical decision).

Defendant suggests that if factfinding by the district court is needed, we should remand so that the hearing can take place in the criminal action. Defendant cites to a memorandum order of this court in which that procedure was followed. *United States v. Williams,* 588 F.2d 825 (3d Cir. 1978) (mem.), *referred to in United States v. Williams,* 631 F.2d 198, 199 (3d Cir.1980). We do not know the basis for the action in the earlier *Williams* case, but we find persuasive reasons to follow the weight of our precedent that this issue should be raised in a collateral proceeding under 28 U.S.C. § 2255. Trial counsel will ordinarily handle the criminal action through the appeal stages. Patently, an ineffective assistance of counsel attack will not be launched by trial counsel. If we were to permit such a challenge to be heard in the criminal action, we would encourage a change of counsel with its concomitant inefficiency and delay. The mode of procedure for hearing an ineffective assistance of counsel claim should not vary with the circumstance of whether trial counsel has been replaced on appeal, as here. Instead, a uniform practice in the circuit is preferable.

We recognize that practice differs in the circuits on the appropriate time to raise an ineffective assistance of counsel claim. We reaffirm our practice, and see no reason to depart from it under the circumstances of this case. Therefore, we decline to review the ineffective assistance of counsel claims at this time.

### III.

### *Evidence of Threats*

■ In his direct testimony, as part of the description of his deal with the government, Charles Huey testified that he was participating in the Federal Witness Protection Program. The government explains that it elicited Huey's testimony that he was in the witness protection program because it was relevant that it was financially aiding him and to rebut any inference that the government was buying his testimony. The fact that a witness is in the witness protection program and has received substantial benefit may be elicited during examination of the witness so long as the prosecution does not exploit any inference of threat from the defendant. *See United States v. Martino,* 648 F.2d 367, 387–88 (5th Cir.), *appeal dismissed in part as moot sub nom. United States v. Holt,* 650 F.2d 651 (5th Cir.1981), *cert. denied,* —— U.S. ——, ——–——, 102 S.Ct. 2006, 2007, 2020, 72 L.Ed.2d 465, 474, *rehearing en banc on other grounds,* 681 F.2d 952 (5th Cir.1982).

The following was elicited on cross-examination by Wujs' counsel:

Q. When did you tell the Government that you had some information and you wanted to know whether or not they were interested in working something out?

A. In February of 1981.

Q. In February of 1981. Now, what was your reason for making that suggestion to the Government?

A. At the time I felt that I was in danger. I felt that my wife was in danger.

MR. ECKARD: Objection, Your Honor.

THE COURT: Overruled.

[Side-bar discussion]

Q. Why did you go to the Government?

A. I felt at the time that there was a danger to myself and my wife, that it—I seen another incident take place that bothered me quite a bit. The conversations that I had had with Joe [Frankenberry] concerning coming down and talking to, with Joe coming down with Ben [Wujs], me setting up a meeting so that Joe and Ben could talk to John Sullivan, and when they were finished talking to John Sullivan, that they wanted to talk to Perry and when they were finished talking to Perry, they wanted to talk to John's wife, Dot, and I felt if they were willing to talk to those three, that I felt that there was a danger in it for my wife and I.

At side-bar, defendant's counsel had expressed the concern that Huey's testimony would "move into areas involving contract killing in Uniontown or [sic] that is the basis for my objection." The testimony, however, did not move in that direction.

■ Defendant contends that the admission of this testimony was erroneous under the precedent of *United States v. Carney,* 461 F.2d 465 (3d Cir.1972) (per curiam), where we ordered a new trial because a witness testified that he did not like the defendant because the defendant tried to kill him and his two children. It is evident that the testimony in this case is far less

direct or inculpatory than that in *Carney.* Huey's testimony was vague, did not directly implicate this defendant, and gave no specific basis for the apprehension of danger. In prior cases, we have upheld convictions in similar circumstances where a witness' testimony as to threats did not indicate that the danger or threat specifically emanated from the defendant. *See Government of the Virgin Islands v. Cruz,* 478 F.2d 712, 716 (3d Cir.1973); *cf. United States v. Barbone,* 283 F.2d 628 (3d Cir. 1960), *cert. dismissed,* 365 U.S. 805, 81 S.Ct. 686, 5 L.Ed.2d 688 (1961). *See also Wallace v. United States,* 412 F.2d 1097, 1102 & n. 4 (D.C.Cir.1969) (per curiam), *cert. denied,* 402 U.S. 943, 949, 91 S.Ct. 1605, 29 L.Ed.2d 110, 119 (1971). In this case, the trial court considered defendant's claim that the introduction of this evidence warranted a new trial. In rejecting the motion, the trial court concluded that the testimony was not prejudicial to the defendant Frankenberry after noting that the witness did not expand on the nature of the incident referred to in his testimony or indicate who was involved. We agree.

## IV.

### Denial of Severance

■ Defendant contends that the trial court committed reversible error in refusing his request for a severance of his case from that of co-defendant Wujs. A severance motion is directed to the discretion of the trial court who is in the best position to weigh the possible prejudice to the defendant from a joint trial. *United States v. Boyd,* 595 F.2d 120, 125 (3d Cir.1978). This is particularly true when a severance motion is made as a result of trial testimony, since the trial judge has the advantage of first-hand observation and can assess the jury's reaction to evidence. *See United States v. Criden,* 648 F.2d 814, 817–18 (3d Cir.1981).

■ Defendant argues that a severance was necessary because the testimony of Huey would implicate defendant in criminal matters unrelated to the charges for which

defendant was then being tried. This argument seems entirely misdirected. A severance of the trial of defendant from that of Wujs would not at all affect Huey's testimony since he would presumably have been called upon by the government to testify against each defendant. In light of the holding of the district court that there was no prejudice to Frankenberry and our own review of the testimony, we cannot hold that the district court abused its discretion by denying a severance.

## V.

### *Multiplicious Counts*

Defendant was convicted on Counts II and III of the indictment for violation of 18 U.S.C. § 922(h)(1). This provides, in relevant part:

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . .

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Count II of the indictment was based on defendant's possession of a .45 caliber Star automatic handgun and Count III was based on his possession of a .22 caliber Ruger revolver. It was stipulated that defendant is a convict within the stricture of section 922(h)(1) and that the weapons had moved in interstate commerce within the meaning of that section.

Defendant contends that the statutory prohibition of receipt of "any firearm" leaves it unclear whether the simultaneous receipt of several weapons constitutes one or several offenses. Therefore, he continues, in the absence of proof that the weapons forming the predicate for separate counts were acquired by him at different times, there is but one offense under section 922(h)(1). The government parries the issue, arguing that if a convicted felon possesses a firearm on one occasion and later possesses another firearm on another occasion he is guilty of two separate offenses under the statute.

We consider first the statutory construction issue, since we have not previously decided the allowable unit of prosecution under section 922(h)(1). We have, however, recently considered the same issue under the overlapping firearms provision, 18 U.S.C.App. § 1202(a), which makes it a crime when a person convicted of a felony "receives, possesses, or transports in commerce or affecting commerce . . . any firearm." [2] In *United States v. Marino,* 682 F.2d 449 (3d Cir.1982), we held that the simultaneous possession of several firearms by a convicted felon constitutes a single offense under section 1202(a) absent a showing that the weapons were separately stored or acquired. This is also the construction placed on the statute by every other court that has considered it. *See, e.g., United States v. Wiga,* 662 F.2d 1325, 1336–37 (9th Cir.1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982); *United States v. Hodges,* 628 F.2d 350, 351–52 (5th Cir.1980); *United States v. Rosenbarger,* 536 F.2d 715, 721 (6th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Kinsley,* 518 F.2d 665 (8th Cir.1975); *United States v. Calhoun,* 510 F.2d 861, 869 (7th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975).

A similar interpretation has been followed under section 922(h). *See United States v. Hodges,* 628 F.2d at 351–52; *United States v. Powers,* 572 F.2d 146, 150–52 (8th Cir.1978). In *Marino,* we relied on the cases interpreting section 922 to support the construction of the statutory language of section 1202(a) and we see no reason why

---

**2.** The partial redundancy between §§ 922(h)(1) and 1202(a) was discussed in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Conviction under § 922(h)(1) allows a maximum potential sentence of five years, 18 U.S.C. § 924(a); conviction under § 1202(a) allows a maximum potential sentence of two years, 18 U.S.C.App. § 1202(a).

the reverse is not equally persuasive. *See* 682 F.2d at 455 n. 7.

■ All of these decisions are based on the application of the rule of lenity as expressed in *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955): "It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." Applying that rule, the Court held that transportation of more than one woman in interstate commerce for prostitution on the same trip and in the same vehicle constituted only one violation of the Mann Act. Here, as in *Bell,* Congress could have defined the offense in such a way as to make the offender liable to cumulative punishment for simultaneous action. Congress has, however, not chosen to do so in unambiguous language. We will, therefore, apply the precedent of *Marino* and *Bell* to hold that simultaneous receipt of more than one weapon covered by section 922(h)(1) supports conviction for only one offense.

The government argues that even if we so construe the statute, two offenses were proved in this case because there is evidence that Frankenberry separately possessed the two weapons, the .22 Ruger on February 7, 1981 and the .45 Star (as well as the .22 Ruger) on February 11, 1981. The government points to the testimony of Huey that during the February 7, 1981 car trip there was a bag in the trunk of the car containing a .22 silencer which the government would have us infer was attached to the .22 handgun and which the government then claims can form the predicate for a separate count in the indictment. We do not address the government's tortuous reconstruction of the witness' testimony because the government's theory, even if supported by the record evidence, could not sustain the separate convictions on Counts II and III in this case.

■ The indictment charges that the possession of each weapon on which the separate counts are predicated was on or about *February 11, 1981.* Although an indictment need not, as a general rule, estab-

lish a date with absolute certainty, when the date is a critical element of the offense a variance between the *allegata* and *probata* is fatal. *United States v. Goldstein,* 502 F.2d 526, 528 (3d Cir.1974) (en banc). The functions of an indictment—apprising defendant of the charge, protecting against reprosecution in the event of an acquittal, and reflecting the grand jury's screening of the charges—are best served by such a rule. *See id.* at 529. In a prosecution under section 922(h)(1), the date would not ordinarily be a critical element of the offense. However, when the indictment can fairly be read to allege simultaneous possession of the firearms on which two separate counts are predicated, the date becomes critical. Therefore, accepting *arguendo* the government's theory that non-simultaneous possession of two firearms constitutes multiple violations of section 922(h)(1), the allegation of the date of possession under the circumstances here becomes critical and cannot be varied by the proof.

Furthermore, not only does the indictment fail to allege separate acquisition or possession of the firearms, but the government's proof was not so directed. The F.B.I. agent who arrested defendant Frankenberry testified he discovered both weapons on his person. Slagle, who testified on cross-examination that he purchased the two guns in question for defendant, did not suggest that he provided them to him at separate times. The government did not try the case on a theory of separate possession. The U.S. Attorney's closing arguments pertaining to the firearm offenses referred only to the possession on February 11. Finally, the court did not present the case to the jury on any theory of non-simultaneous possession. The charge to the jury submitted the case on the premise that possession of weapons on the same date would support convictions on Counts II and III of the indictment. Accordingly, there would be no basis for us to read the jury's verdict to support the government's *post hoc* reconstruction.

■ Moreover, the government's focus on separate possession overlooks the lan-

guage of section 922(h)(1) which, unlike section 1202(a)(1), proscribes *receipt* of a firearm not merely *possession*. *See United States v. McCrary*, 643 F.2d 323, 326–27 (5th Cir.1981). Although receipt may be shown by possession when a single offense is charged, the government must prove separate receipt rather than merely separate possession in order to support multiple offenses under section 922(h)(1). As we have indicated, no such proof was offered in this case. Therefore, the double firearms convictions must fall.

### VI.

For the foregoing reasons, we will affirm the judgment of conviction of defendant Frankenberry on Counts I and IV, and we will vacate the sentences imposed on Counts II and III and remand the case to the district court for the limited purposes of resentencing thereon.