812 F.2d 1409
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence HUMPHREY (86-1337), Rosie E. Freeman (86-1398),
Defendant-Appellee.
 Nos. 86-1337 and 86-1398.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1987.
 
 Before MERRITT, JONES and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants appeal the partial denial of their motion to suppress on the grounds that the search warrant was not valid and that the police officers failed to comply adequately with the "knock and announce" rule. Binding precedent in this circuit mandates our affirmance of the district court's decision.
 
 
 2
 On October 11, 1984, Officer Turner obtained a state search warrant authorizing a search of defendants' home for controlled substances and paraphernalia, narcotics proceeds, gambling paraphernalia, firearms, and items establishing residency or control of the house. The facts in the affidavit sworn to by Turner upon which issuance of the warrant was based were as follows:
 
 
 3
 The affiant is a member of the Wayne County Federal Task Force and is working in conjunction [sic] with S/A Paul Lindsey of the F.B.I. relative to the trafficking of heroin and cocaine by a black male, who is known to a reliable informant of the F.B.I. as "Big Daddy" and also as "Track". The affiant and S/A Lindsey have worked with this informant in the past and information from this informant has resulted in the arrest of more than five persons for violations of the Michigan Controlled Substances Act. Cocaine, heroin, firearms and narcotic proceeds have been confiscated as a result of the same information.
 
 
 4
 This informant provided information to S/A Paul Lindsey which states that within the past 72 hours of the date of this search warrant this informant did observed [sic] controlled substances inside of the named location. The informant states that the informant knows the powder to be heroin and that the informant has observed the transfer of heroin and cocaine by "Big Daddy". That "Big Daddy" did obtain these controlled substances from inside off [sic] the named location which is the home of "Big Daddy". The informant further states that "Big Daddy" has stated to the informant that he is never out of dope. The informant states that "Big Daddy" is a big numbers man and that proceeds from the numbers operation are stored at the named location.
 
 
 5
 An investigation conducted by the affiant shows that a vehicle parked within the curtilage of the location to have Michigan Plate 765-KPX, to: Rosie E. Freeman at 12703 Broadstreet, Detroit 48238.
 
 
 6
 Based upon the information received by the affiant from S/A Paul Lindsey, it is believed that the information received from the informant is reliable and that the items named to be searched for are being stored inside of the named location, in violation of the Michigan Controlled Substance Act (Public Health Code).
 
 
 7
 At about 2:30 p.m., on October 12, 1984, approximately eight state and federal officers executed the search warrant. Turner, who was the officer in charge of the case, testified that they knocked on the front door, announced their presence, and waited for about 20 to 30 seconds. When no one answered the door within that time, the officers broke into the house with a battering ram. The officers found Defendant Freeman sitting on the side of her bed in her second-floor bedroom tallying figures. She had a television on, playing loudly.
 
 
 8
 Suspected gambling paraphernalia and proceeds were seized from defendant Freeman's bedroom. In a search of defendant Humphrey's bedroom, controlled substances, cash and firearms were seized. Betting slips, more firearms and cash, and other items were also seized from the third-floor attic.
 
 
 9
 Based upon the items seized in the October 12, 1984 search of the house, Turner obtained a state arrest warrant on January 28, 1985, which was executed the same day. Before the arrest warrant was executed, the DEA agent, Michael Grabowski, and Wayne County Sheriff, Thomas Schmidtke, had defendants' home under surveillance. They saw Humphrey drive a car into the garage, and walk from the garage to the front door. Though they were aware of the arrest warrant, they did not try to stop Humphrey because he was close to the door and because there was a cyclone fence between them. About 15 to 20 minutes later, Turner and other officers arrived. They knocked on the door and were let into the house by defendant Freeman. It took Freeman approximately one minute to answer the door. Freeman said Humphrey was upstairs in his bedroom, and several officers went upstairs and arrested him. Controlled substances, cash, and a gun were seized.
 
 
 10
 Two officers went upstairs to the attic in a "protective sweep," looking for a third person who was in the house. While looking in a closet, Schmidtke seized an opaque plastic bag with white powder in it.
 
 
 11
 The district court granted defendants' motion to suppress the evidence seized from the third-floor attic on the grounds that the third-floor search exceeded a justifiable protective sweep and that the evidence was not in plain view.
 
 
 12
 The district court, however, denied defendants' motion to suppress the other controlled substances seized from Humphrey's bedroom when he was arrested. The court rejected defendants' arguments that the October 12, 1984 search warrant was defective because it was not based on probable cause, and that the search warrant was improperly executed because the officers failed to comply with the knock and announce rule.
 
 I.
 
 13
 In reviewing a magistrate's decision to issue a search warrant, "great deference ... must be shown to the ... magistrate's probable cause determination...." United States v. McManus, 719 F.2d 1395, 1398 (6th Cir.1983). The standard of review is "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985). The affidavit submitted to the magistrate, quoted supra, provided a clearly substantial basis for the issuance of the warrant.
 
 
 14
 Defendants argue that the credibility of the informant relied upon in the affidavit was too weak to support a probable cause finding. They base this contention mainly upon the affidavit's failure to cite any convictions resulting from the informant's previous tips. However, evidence of previous convictions is not necessary to prove an informant's credibility. United States v. Marino, 682 F.2d 449, 453 (3rd Cir.1982). Rather, if the affidavit states that the informant's previous tips led to evidence being found and arrests being made, then the credibility of the informant is sufficiently established. See, e.g., Christian v. McKaskle, 731 F.2d 1196, 1200 (5th Cir.1984).
 
 
 15
 Defendants also argue that the informant's basis of knowledge was insufficient for a finding of probable cause. However, the informant stated that within the past three days he had been inside the house to be searched and that he had seen illegal drugs there. It is hard to imagine a much more solid basis for attesting to the presence of drugs in a home.
 
 
 16
 Finally, defendants argue that a "reckless falsehood" was presented in the affidavit, since defendant testified that he never stated to anyone that "he is never out of dope." Who was swearing truthfully concerning that statement was a credibility issue for the district court to decide.
 
 
 17
 The government correctly points out that even if the search warrant was defective, suppression of evidence resulting from good faith reliance on a warrant will be ordered only in exceptional circumstances. United States v. Leon, 468 U.S. 897 (1984). Leon recognized four circumstances where suppression remains an appropriate remedy despite the existence of a warrant. Defendants argue that two of those circumstances are present in this case: (1) an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and (2) an affidavit containing a knowing or reckless falsehood.
 
 
 18
 With respect to the first exception, the affidavit cited an informant who had previously given accurate information and who now said that he had personal knowledge of the existence of drugs and a numbers operation in defendants' house. We agree with both the magistrate and the district court that these were sufficient indicia for probable cause, and it certainly was not "entirely unreasonable" for the officer seeking the warrant to believe he had before him sufficient indicia of probable cause. With respect to the second exception, there is no indication that the officer recklessly disregarded the truth of the informant's allegation that defendant said he never ran out of dope. All that defendants have presented to contradict the informant's allegation is one defendant's self-serving denial.
 
 
 19
 Accordingly, suppression would be inappropriate since the officers relied upon the warrant in good faith.
 
 II.
 
 20
 Defendants also argue that the officers either failed to knock and announce or that they failed to wait long enough for someone to answer the door. See 18 U.S.C. Sec. 3109 (1982) (officer may break open door if refused admittance after notice of his authority and purpose). They contend that since one defendant was found on her bed tabulating numbers receipts, it is unlikely that the door was knocked since she would at least have hidden. However, given that the police forced open the front door with a battering ram and she still failed to move, it is not surprising that a mere knock at the door failed to rouse this woman. Therefore, there is, under the circumstances, little reason to doubt the officer's testimony that he knocked and shouted. Moreover, the district court made explicit findings on credibility with regard to this issue to which we owe substantial deference.
 
 
 21
 The lawfulness of the officers' wait of only twenty to thirty seconds after knocking and shouting is more troubling. Although this seems to be a small amount of time from which to imply a denial of entry, this court has formerly held in United States v. Ciammitti, 720 F.2d 927 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984), that a delay of fifteen to thirty seconds (even at 12:15 a.m.) is sufficient to imply a denial of entry. The potential for abuse suggests the advisability of a close reexamination of the time factor. However, because one panel of this court may not overrule the decision of another panel, we must follow Ciammitti and hold that the officers lawfully entered the house by force.
 
 
 22
 Accordingly, we AFFIRM the decision of the district court.