UNITED STATES of America, Appellee,

v.

**Patricia Susan LANDIS, Appellant.**

No. 80–1318.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1980.

Decided Oct. 16, 1980.

Douglas A. Kelley, Asst. U. S. Atty., D. Minnesota, Minneapolis, Minn., for appellee.

Mary Wertz, Minneapolis, Minn., Kurzman, Shapiro & Manahan, Minneapolis, Minn., for appellant.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and PORTER, District Judge.*

LAY, Chief Judge.

Patricia S. Landis was convicted on one count of possession of lysergic acid diethylamide (LSD) with intent to distribute and on a second count of conspiracy to distribute LSD, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] On appeal she challenges the issuance of a search warrant on the ground there was an insufficient showing of probable cause. We disagree; the convictions are affirmed.

Landis was arrested on January 5, 1980, at the Minneapolis–St. Paul Airport. A warrant was obtained to search her luggage, where the officers found approximately 32,000 units of LSD. In applying for the search warrant, Steven L. Hagenah, an investigator for the Minnesota Bureau of Criminal Apprehension (MBCA), filed an affidavit with a magistrate which alleged that Hagenah, acting as an undercover agent, purchased LSD on several occasions in December, 1979, and that Nick Fred Nicholas was identified as the direct or indirect source of the LSD. The affidavit also stated that on December 12, 1979, Hagenah met with Nicholas and discussed a large LSD transaction; that Nicholas told Hagenah that Nicholas' connection for the LSD was a female who was "butchy looking and fat and dumpy;" that on December 19, 1979, Nicholas sold him approximately 4,000 units of LSD; and that from December 19, 1979, to January 6, 1980, Hagenah and Nicholas had numerous conversations regarding a large purchase of LSD by Hagenah from Nicholas scheduled for January 5, 1980.

The affidavit further states that on January 4, 1980, Nicholas told Hagenah that the female "connection" "would be on a commercial aircraft with a California destination and that this above described individual would be enroute to California via commercial airliner by 11:30 p. m."; that Nicholas stated that the purpose of the trip was to obtain 32,000 units of LSD; that on January 4, at approximately 10:35 P.M. an MBCA agent at the Minneapolis–St. Paul Airport saw a white female, approximate 5' 6" tall and 140 pounds; that Western Airlines employees confirmed this person had purchased a one–way ticket to San Francisco under the name "A. Garcia" for a flight, originally scheduled for 10:50 P.M., which was expected to depart approximately 40 minutes late; that the ticket agent said this female was the only one matching the description provided by MBCA; and that the agents saw her board the plane, and said she appeared "nervous, watchful, and suspicious."

According to the affidavit, at around 10:05 P.M. on January 5, 1980, MBCA agents saw "A. Garcia" arrive at the Minneapolis–St. Paul Airport from a Northwest Airlines flight. She went to a phone booth adjacent to the gate and made a phone call. An agent was in the booth next to hers and heard her say "Are you okay?", "Everything went fine," "Perfecto," and "I'll meet you at the West Bank in 45 minutes." She made a second call, saying "Hi dear" and that she would be home about 1:00. She was described as "extremely watchful of all people in the area." She then met another woman and went to a parked vehicle, where agents arrested them both. "A. Garcia" was identified as appellant Patricia S. Landis.

*Probable Cause*

█ Landis argues that the magistrate lacked probable cause because the information in the affidavit failed the *Aguilar–Spinelli* test,[2] which requires, in part, that the affidavit set forth "some of the underlying

---

* Donald J. Porter, United States District Judge for the District of South Dakota, sitting by designation.

1. On the possession count Landis received a sentence of five years imprisonment followed by a four year special parole term; she received a consecutive sentence of two years imprisonment and a four year special parole term on the conspiracy charge.

2. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v.*

circumstances from which the informant reached the conclusions contained in the tip." *United States v. Graham,* 548 F.2d 1302, 1307 (8th Cir. 1977).[3] It is fundamental that "affidavits for search warrants . . . must be tested and interpreted by . . . courts in a commonsense and realistic fashion," *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). After describing Nicholas' sales of LSD, the affidavit states that the female described was Nicholas' "connection." A reasonable inference exists that Nicholas' knowledge of his connection's appearance and her travel plans was based on his own participation in the scheme; it is reasonably evident that his knowledge was derived from his personal involvement in the criminal activity as a coconspirator. Such information is plainly superior to "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). *See United States v. Brown,* 584 F.2d 252, 255–57 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979) (undercover purchases of drugs and identification of source); *United States v. Kershman,* 555 F.2d 198, 199–201 (8th Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977) (undercover purchase of drugs and identification of source and source's "connection"); *United States v. Burgard,* 551 F.2d 190, 192–93 (8th Cir. 1977) (undercover purchase of firearms and identification of source). *See also United States v. Long,* 449 F.2d 288, 291–93 (8th Cir. 1971), *cert. denied,* 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972); *United States v. Martin,* 615 F.2d 318, 324 (5th Cir. 1980); *United States v. Ashley,* 569 F.2d 975, 981 (5th Cir.), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978).

 Landis also claims that even if Nicholas' information meets the *Aguilar* and *Spinelli* standards, his description of Landis was too vague to support the conclusion that the woman arrested at the airport was Nicholas' "connection." We emphasize that "[t]he affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt." *United States v. Smith,* 462 F.2d 456, 460 (8th Cir. 1972). In this regard, it is also fundamental that great deference is to be shown the magistrate's determination. *McCreary v. Sigler,* 406 F.2d 1264, 1268 (8th Cir.), *cert. denied,* 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969).

Although the description of Nicholas' connection as a "butchy, fat and dumpy" female may be imprecise when taken alone, the affidavit also informed the magistrate of other salient factors. Nicholas said a woman of this description would leave for California by 11:30 on January 4, 1980; Landis flew to San Francisco on that day and at approximately the time predicted.[4] Landis was identified by MBCA agents and an airline employee as the only person on the flight who matched the description, and she had a nervous and watchful appearance. The presence of these additional facts must be weighed along with the description.

We find probable cause sufficient to justify the issuance of the search warrant.

We affirm the convictions.

---

*Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**3.** Landis does not argue that the affidavit failed to show the reliability of the informant.

**4.** The affidavit says Landis boarded the plane around 12:00. Although the affidavit states that the connection would leave *by* 11:30, not *at* 11:30, we recognize that "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical . . . manner." *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). The magistrate could consider the fact that Nicholas mentioned an 11:30 departure, and that the flight Landis was on was a 10:50 flight which was expected to be 40 minutes late. The affidavit also says that when Landis bought her ticket she told a ticket agent she already knew the flight was expected to depart 40 minutes late.