UNITED STATES of America,
Appellant,

v.

Maria BELTRAN, Defendant, Appellee.

No. 90–1307.

United States Court of Appeals,
First Circuit.

Heard Sept. 5, 1990.

Decided Oct. 26, 1990.

Patrick M. Walsh, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., Concord, N.H., was on brief, for appellant.

Wilbur A. Glahn, III, by appointment of the Court, with whom McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., was on brief, for defendant, appellee, Maria Beltran.

Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

The government appeals from a district court order suppressing evidence that the government wishes to use in its prosecution of Maria Beltran for drug crimes. *See* 18 U.S.C. § 3731. The government's most important argument concerns cocaine that police seized at Maria Beltran's apartment at about 11 p.m. on October 24, 1989. Although the police had a search warrant permitting the seizure, the district court found that the warrant rested upon a supporting affidavit that said the police had seen the drugs when they entered Ms. Beltran's apartment at about 8 p.m. that evening to arrest her. The district court ruled that this earlier, warrantless entry violated the federal Constitution. It therefore held the later seizure, flowing from the earlier entry, unconstitutional. The basic question on the appeal is whether the district court could lawfully conclude that the earlier en-

* Of the Second Circuit, sitting by designation.

try was unconstitutional. We believe that it could.

■ 1. *Exigent Circumstances.* The government concedes, as it must, that the Constitution normally requires the police to obtain an arrest warrant before entering a person's home to make an arrest. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); *accord Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). The government says, however, that in this case "exigent circumstances" excused the entry. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) ("There must be a showing by those who seek exemption [from the warrant requirement] that the exigencies of the situation made that course imperative.") (citations omitted) (quotations omitted). The district court decided this fact-based question in the defendant's favor. We must decide whether, on a reasonable view of the evidence, the district court's determination of the underlying facts is "clearly erroneous," *United States v. Curzi*, 867 F.2d 36, 42 (1st Cir.1989); *United States v. Moore*, 790 F.2d 13, 15 (1st Cir.1986), and whether its characterization of the facts (as not showing exigent circumstances) is proper. *Curzi*, 867 F.2d at 42; *United States v. Veillette*, 778 F.2d 899, 902 (1st Cir.1985).

The record reveals the following: A "confidential informant" (whom the record says was Maria Beltran's supervisor at work) told police that Maria Beltran had sold him cocaine at least twelve times in the past. Drug investigators then used the informant to arrange a cocaine sale. On October 23, 1989, the day of the sale, the police closely monitored the transaction. They observed the informant and Maria Beltran emerge from her apartment, enter the informant's car, and transfer money and powder. The investigators tested the powder and found it consisted of two ounces of cocaine. The investigators then organized a second sale of a pound of cocaine for October 24, the following day. At 4:20 p.m. on October 24, police overheard a telephone conversation between Maria Beltran

and the informant. Maria Beltran (in the drug investigator's words) "instructed" the informant to "go" to her apartment at "7:30 p.m." for "the purpose of purchasing one pound ... of cocaine" at a price of $1100 per ounce. The police waited until 7:30 p.m. The informant then entered the apartment, saw the cocaine, went outside, and alerted the police. About fifteen agents immediately entered the apartment and arrested Maria Beltran. About one hour later, police applied for the search warrant in question.

These facts, in our view, support the district court's conclusion that "circumstances" were not "exigent" for one simple reason: the record fails to explain why the police did not apply for an arrest warrant sometime between 4:20 p.m. and 7:30 p.m. on the evening of the arrest. The government argues at length that the police feared that once the confidential informant had seen the cocaine and left the apartment, Ms. Beltran would have destroyed the evidence had they delayed long enough to get a warrant. But this argument is beside the point. At best it explains only the failure to seek a warrant in the brief time period between 7:30 p.m. when the informant told the police he had seen the pound of cocaine and when they entered the apartment. It does not explain why the police did not apply for a warrant during the three *preceding* hours between 4:20 p.m. and 7:30 p.m.

In the district court the government explained the delay between 4:20 p.m. and 7:30 p.m. on the ground that the police were not certain before 7:30 p.m. that they had probable cause to obtain an arrest warrant. However, the information available to the police showing Maria Beltran's drug selling activities (her prior dealings with the informant, the 4:20 p.m. phone call, her completed two ounce sale the previous day) was more than sufficient to justify issuance of a search warrant (and, for the same reasons, an arrest warrant) after 4:20 p.m. on the afternoon of October 24. *See, e.g., United States v. Santana*, 895 F.2d 850, 852 (1st Cir.1990) (probable cause to search car exists where police monitored phone conversation between informant and

defendant concerning drug transaction and then saw two men leave apartment where transaction was supposed to occur and get in car); *United States v. Aguirre*, 839 F.2d 854, 858 (1st Cir.1988) (probable cause for search of apartment exists where reliable informant had transacted drug purchase earlier in day, second informant had purchased drugs there in past and truck used for sale was parked outside); *accord United States v. Landis*, 632 F.2d 66, 67–68 (8th Cir.1980). Indeed, one of the police officers testified at the suppression hearing that he believed he had "probable cause" for a search warrant the day before, on October 23, after Maria Beltran sold the informant the first two ounces of cocaine (a matter on which we take no view).

■ We have found other testimony in the record suggesting a different reason the police officers did not obtain a warrant. Evidently the officers believed that if they obtained an arrest warrant, they would have had to execute it immediately. They feared that, if Ms. Beltran had failed to produce the cocaine at 7:30 p.m., they would have had to arrest her anyway, thus destroying the possibility of investigating further the drug activities in which she seems to have played a minor part. The problem with this argument is that no legal principle, or authority, of which we are aware *requires* a policeman to execute an arrest warrant as soon as he obtains it. The Federal Rules of Criminal Procedure contain no such time limit. *See* Federal Rules of Criminal Procedure 4(c)(1) and 5(a). *Cf. United States v. Toro*, 840 F.2d 1221, 1233–34 (5th Cir.1988) (law enforcement officials are under no constitutional "duty to terminate a criminal investigation the moment they have an arrest warrant in their hands"); *United States v. Hudgens*, 798 F.2d 1234, 1238 (9th Cir.1986); *United States v. Cravero*, 545 F.2d 406, 413 (5th Cir.1976). We have found no New Hampshire authority suggesting any such requirement. Thus, if Ms. Beltran had failed to produce the cocaine at 7:30 p.m., the police might have waited, investigated further, and if a lengthy wait made the warrant stale, they could always have applied for a new warrant later. All this is to say

that we agree with the district court. We do not understand why the police could not have obtained a warrant earlier; and, this being so, we do not believe that "exigent circumstances" justified an exception to the "arrest in the home" warrant requirement.

■ In so holding we are *not* saying that police officers must apply for an arrest warrant the instant they have "probable cause." *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966) (mere existence of probable cause does not require immediate arrest). The police might justifiably defer obtaining a warrant where, for example, they reasonably believe a warrant will prove unnecessary or they expect that any home arrest will likely occur at a distant future time, that is to say, far enough in the future to permit a later warrant application. Should surprising events overtake police officers operating under such reasonable beliefs, they might then still be able to claim "exigent circumstances." *United States v. Cresta*, 825 F.2d 538, 553 (1st Cir.1987) ("Although probable cause existed some time prior to the arrests, this does not negate the rise of exigent factors."). Our cases make clear, however, that where the police fully expect that they may have to enter a home to make an arrest in the near future, and when they have more than enough time and knowledge to secure a warrant, they must do so. *Curzi*, 867 F.2d at 43 (police had two hours in which to obtain warrant and failure to do so prevented finding of exigent circumstances); *accord, Niro v. United States*, 388 F.2d 535, 540 (1st Cir.1968) (authorities cannot claim exigency "if the need for it has been brought about by deliberate and unreasonable delay"); *United States v. Rengifo*, 858 F.2d 800, 804 (1st Cir.1988) (same). (However, we do not mean to imply that officers can use an arrest warrant as a pretext for a search of premises for which they lack probable cause for a search.) To repeat, in this case, three or four hours before the police arrested Ms. Beltran, they knew that they were likely to do so, they had an adequate basis for obtaining a warrant, and they could have obtained one. There-

fore the warrantless arrest violated the Fourth Amendment.

2. *Independent Source Doctrine.* The government argues that, even if the arrest was unlawful, the later search, pursuant to the warrant issued at 9:00 p.m., was lawful. It points out that the supporting affidavit that Agent Gerry presented to the magistrate, in addition to a statement respecting the improperly discovered cocaine, contains a host of statements, assertions, and evidence about events prior to the 7:30 p.m. entry. In fact, the single statement about the pound of cocaine seen in Maria Beltran's apartment is simply icing on a very large cake. The government adds that the affidavit, with the improper statement excised, is more than sufficient to support issuance of the warrant. Hence, it argues, the warrant is lawful, the later search pursuant to the warrant is lawful, and the district court should not have suppressed the evidence. *See Murray v. United States,* 487 U.S. 533, 542, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988).

■ The government's argument fails, however, for one basic reason. The government did not make this argument, or anything resembling this argument, in the court below. We normally will not consider an argument here not made in the trial court. *United States v. Fox,* 889 F.2d 357, 359 (1st Cir.1989); *United States v. Figueroa,* 818 F.2d 1020, 1025 (1st Cir.1987). Although we are prepared to overlook the requirement, in a criminal case, to prevent a "miscarriage of justice," *Nogueira v. United States,* 683 F.2d 576, 578 (1st Cir. 1982), we cannot find a "miscarriage of justice" here. For one thing, the government had more than ample opportunity to make the argument in the court below (indeed, one of defendant's submissions contains a "preemptive" answer to the argument it assumed the government would make), yet it failed to do so. For another, it is uncertain whether the government would have prevailed. The Supreme Court has recently suggested that a warrant that rests upon information obtained through an unlawful arrest is invalid unless the government shows not only that it had enough lawfully obtained information to justify the warrant but also that it would have applied for the warrant in the absence of the unlawful arrest. *Murray,* 487 U.S. at 542, 108 S.Ct. at 2535 (source is not sufficiently independent if agents' decision to seek the warrant was prompted by what they saw during illegal entry). *But compare Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) (validating the warrant simply if illegal information is set aside and the affidavit still supports a finding of probable cause). Given the government's efforts to show that the police thought they *lacked* probable cause without the evidence of the 7:30 p.m. sale, it might have had difficulty showing that it would have applied for the warrant in the absence of the arrest. Finally, the record suggests that the government believes Maria Beltran was a comparatively minor figure in the drug operation and that it has other evidence against her. For example, even though the cocaine itself is not admissible, the confidential informant might be able to testify as to what he saw in the apartment. We can find no "miscarriage of justice" in holding the government to the arguments it made below.

■ 3. *Statements Made in the Police Station.* In a separate ruling the district court suppressed statements that Maria Beltran made to the police after her arrest in the police station, at about 10:00 p.m. that evening. The court did so because it considered the statements to be "fruits" of the unconstitutional arrest. Subsequently, however, the Supreme Court, in *New York v. Harris,* ── U.S. ──, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), held that courts should not necessarily suppress statements made to police after a warrantless arrest in the home. The Court wrote that the *Payton* rule, forbidding warrantless arrests in the home,

> was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Harris, protection for statements made outside their premises where the police have

probable cause to arrest the suspect for committing a crime.

*Harris,* 110 S.Ct. at 1643.

The appellee argues that the court should have suppressed the statements regardless, for, she says, they are the fruit of an unlawful *search,* not an unlawful arrest. The government replies that this case is identical, in all relevant respects, to *Harris.* Our examination of the record suggests that whether, or the extent to which *Harris* applies may turn on questions of fact, such as when the police seized the items in question or what motivated Ms. Beltran's statements. Therefore, the district court should determine this matter in the first instance.

For these reasons, the court's order suppressing the materials seized during the search is

*Affirmed.*

The order suppressing the defendant's statements is

*Vacated and the case remanded for further proceedings.*

VAN GRAAFEILAND, Senior Circuit Judge, concurs in the result.