USCA1 Opinion

 

 December 31, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1517 UNITED STATES OF AMERICA, Appellee, v. GEOFFREY T. DONLIN, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Richard H. Hubbard, by appointment of the Court, with whom ___________________ Hubbard & Quinn, P.A., was on brief for appellant. _____________________ Peter E. Papps, Assistant United States Attorney, with whom ______________ Jeffrey R. Howard, United States Attorney, and Nancy E. Hart, __________________ ______________ Assistant United States Attorney, were on brief for appellee. ____________________ ____________________ TORRUELLA, Circuit Judge. Appellant was convicted by a _____________ jury of possessing and making a short-barreled shotgun in violation of 28 U.S.C. 5822 and 5861(c). Appellant now challenges the district court judge's suppression hearing ruling that a consent search and exigent circumstances justified two warrantless entries into his apartment and the seizure of the firearm. As we find that the ruling was correct, we affirm. FACTS1 FACTS _____ On the night of August 28, 1988, appellant engaged in a violent argument with his wife. Two New Hampshire police officers responded to the resulting domestic dispute call. They found Mrs. Donlin and her teenage sister in the hallway at appellant's apartment house where they learned that appellant was extremely intoxicated and violent. Mrs. Donlin asked the officers to remove appellant from the apartment. Attempting to honor her request, the officers went to the door and knocked, but appellant did not answer. The officers returned to the hallway and explained to Mrs. Donlin the domestic violence laws, emphasizing that they could not make appellant leave if he did not want to. They convinced Mrs. Donlin and her sister that it would be best for them to spend the night away from the apartment. Mrs. Donlin and  ____________________ 1 We note that the facts in this case are keenly disputed. We adopt, however, the facts as found by the district court at the suppression hearing. They are supported by testimony on the record, and not clearly erroneous. See United States v. Cruz ___ ______________ ____ Jim nez, 894 F.2d 1, 7 (1st Cir. 1990) (clear error standard of _______ review for fact findings at suppression hearings). -2- her sister urgently requested assistance to retrieve their personal belongings and pocketbooks from the apartment before going anywhere. On the way back to the apartment to collect these items, Mrs. Donlin informed the officers that appellant had a shotgun, but that he probably would not use it. Mrs. Donlin unlocked the kitchen door with her key, but the door opened only a few inches because the security chain was fastened. Appellant appeared at the door and conversed briefly with his wife through the crack. When he learned that she was accompanied by two police officers, he spoke with them as well. One of the officers asked appellant to allow Mrs. Donlin to enter to collect her belongings, and told appellant that the officers were there only to assist her. Appellant asked the officers if they had a search warrant. When the officers said no, they did not, appellant refused entry and began to shut the door. Officer Cuddihy, however, blocked the door with a flashlight, allegedly to prevent the door from slamming into Mrs. Donlin. The flashlight fell into the apartment and appellant shut the door. Appellant did not return the flashlight or open the door again. The district court characterized this as the first entry. Mrs. Donlin continued to insist that she needed her personal belongings. The officers then decided to enter the apartment to collect her belongings and arrest appellant for theft of the flashlight. The officers used Mrs. Donlin's key to unlock the door, but the chain remained in place. The officers thus opened the door to the extent permitted by the chain and -3- kicked the door from the chain. Officer Dodge entered first and found appellant in the bedroom pointing a sawed-off shotgun at him and shouting threats. The officers retreated swiftly. This was the second entry. Because the officers felt that the situation was dangerous, with an angry, intoxicated man wielding a shotgun, they called for backup and evacuated the building. When help arrived, the officers reentered the apartment. This third entry occurred some two hours after the second entry. Searching for appellant, they found the shotgun dismantled on the floor of the closet, as well as other weapons. Appellant was found in the rear parking lot lying across the front seat of his pickup truck, and was arrested. At trial, defendant sought to suppress the shotgun because the officers lacked no justification for the warrantless entries and the seizure. The trial judge determined that the first two warrantless entries with the use of Mrs. Donlin's key, were justified as consent searches. The final entry was valid, reasoned the trial judge, because exigent circumstances and probable cause obviated the need for a warrant. LEGAL ANALYSIS LEGAL ANALYSIS ______________ It is well established that any intrusion upon a constitutionally-protected privacy interest without a proper warrant is "per se unreasonable under the Fourth Amendment ___ __ subject only to a few specifically established exceptions." United States v. Morris, 977 F.2d 677 (1st Cir. 1992) (citing _____________ ______ -4- California v. Acevedo, 111 S. Ct. 1982, 1991 (1991)). This case __________ _______ requires us to determine whether two of these exceptions validate the warrantless intrusions into appellant's constitutionally- protected privacy interest in his apartment. See Payton v. New ___ ______ ___ York, 445 U.S. 573, 585 (1980) (Fourth Amendment protects from ____ intrusion into home). I. I. Consent to a search is one of the exceptions which obviates the need for a warrant. United States v. Patrone, 948 _____________ _______ F.2d 813, 815 (1st Cir. 1991), cert. denied, 112 S. Ct. 2953 _____________ (1992). Valid consent may be given by a defendant or a third party with "common authority" over the premises. United States _____________ v. Matlock, 415 U.S. 164, 171 (1974). Third party consent remains _______ valid even when the defendant specifically objects to it. See ___ J.L. Foti Constr. Co. v. Donovan, 786 F.2d 714, 716-17 (6th Cir. ______________________ _______ 1986); Donovan v. A.A. Beiro Constr. Co., 746 F.2d 894, 898-900 _______ _______________________ (D.C. Cir. 1984). Appellant contends that Mrs. Donlin did not consent to the first two warrantless entries when she produced the keys to the door. It seems to us, however, that Mrs. Donlin's actions evinced clear and voluntary consent to enter the apartment. She produced keys to the apartment, and insisted that she needed her personal belongings. See United States v. Gilbert, 774 F.2d 962 ___ _____________ _______ (9th Cir. 1985) (request that officers retrieve items from home constituted valid consent to entry of home). Appellant next argues that if Mrs. Donlin consented to -5- something, the forced second entry which occurred was not it. The remaining question as to the validity of the second warrantless entry, thus, is whether the scope of Mrs. Donlin's consent extended to kicking in the door. The standard for determining the scope of consent is what a reasonable person would have understood the consent to entail. Florida v. Jimeno, _______ ______ 111 S. Ct. 1801, 1803 (1991). In this case, we note that Mrs. Donlin initially asked the officers to remove appellant from the apartment. When they explained that they could not do this and convinced Mrs. Donlin to spend the night elsewhere, Mrs. Donlin prevailed upon them to assist in collecting her personal belongings. After she failed in her initial attempt at entering the apartment, she produced the keys for the officers, and continued to insist that she needed her belongings. Given these circumstances and Mrs. Donlin's actions, the officers reasonably believed that Mrs. Donlin's consent extended to kicking the door from the chain in order to gain entry into the apartment. As Mrs. Donlin consented to the officers' entry into her apartment, and their entry fell within the scope of her consent, we find the first two entries constitutionally valid. II. II. Exigent circumstances also may justify a warrantless search and seizure. United States v. Almonte, 952 F.2d 20, 22 _____________ _______ (1st Cir. 1991), cert. denied, 12 S. Ct. 1776 (1992). The test ____________ for whether such circumstances exist in a case is "'whether there is such a compelling necessity for immediate action as will not -6- brook the delay of obtaining a warrant.'" Id. (quoting United ___ ______ States v. Adams, 621 F.2d 41, 44 (1st Cir. 1980)). The inquiry ______ _____ is necessarily "fact-based." United States v. Beltr n, 917 F.2d _____________ _______ 641, 642 (1st Cir. 1990). Appellant contends that the elapsed time between the second entry and the third entry shows that no compelling necessity for immediate action justified the third entry. We do not agree. During the elapsed time, the officers took extensive safety measures to respond to a dangerous situation -- an intoxicated and violent man with a sawed-off shotgun. The safety measures included evacuating the apartment building, assembling a team of law enforcement officers, some off-duty and from neighboring towns, and attempting to communicate with appellant to bring the situation to a peaceful resolution. Given the need for the officers to work with all available speed to undertake the safety measures, the approximately two hour delay in making the final entry does not suggest to us that there was a lack of compelling necessity for immediate action. Rather, the officers' industrious work to implement safety measures during the period suggests the urgency with which immediate action was needed to resolve the situation in a timely and secure manner. See id. (examining what police ___ ___ did in intervening time to determine whether exigent circumstances continued). Any further delay in action posed a -7- threat to public safety.2 As a final matter, we note that probable cause supported the final entry into appellant's apartment. At this point, appellant had threatened the officers with a shotgun, and they knew him to be intoxicated and violent. This knowledge resulted from a valid consent search, as discussed in subsection I., supra, and thus is not subject to the exclusionary rule. The _____ police were not aware at the time of entry that appellant had fled the apartment, and were actively searching for him in the apartment when they found the shotgun. Because exigent circumstances and probable cause existed at the time of the third and final warrantless entry and the seizure, that entry and seizure was constitutionally valid. Affirmed. _________  ____________________ 2 In our treatment of this issue, we have not attempted to second guess the police or to substitute hindsight for their view of the events and threatened possibilities at the time. But, the fact that the two-hour period was devoted wholly to an elaborate, but ultimately futile, marshalling of area law enforcement officers, with no effort to secure a warrant, gives us concern in light of the particularly strong Fourth Amendment protection afforded one's home. -8-