**UNITED STATES of America, Plaintiff,**

v.

**Luis E. VARCARCEL de JESUS, Defendant.**

**Criminal No. 96–197 (DRD).**

United States District Court, D. Puerto Rico.

March 21, 1997.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Defendant.

Stephen W. Muldrow, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for Plaintiff.

### ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Defendant Luis Varcarcel de Jesus' (hereinafter defendant) "Motion to Suppress Evidence Seized in a Warrantless Search and Incriminating Statement," filed on September 3, 1996 (Docket No. 21), supplemented by "Defendant's Brief Requesting Suppression of Evidence," filed on January 29, 1997 (Docket No. 34). The United States filed responses to the defendant's motions on September 30, 1996, and on February 11, 1997 (Docket No.

---

35).[1] The defendant seeks to suppress numerous firearms that were seized in his residence on June 19, 1996, and a subsequent statement which he made to law enforcement officers.

Based upon credibility of the testimony received, the pleadings and other documents filed by the parties and presented to the Court at the October 17, 1996, evidentiary hearing, as well as the written submittal of the parties, the Court makes the following factual findings and legal conclusions.

On June 18, 1996, the defendant's wife, mother-in-law, and neighbor met with Agent Carlos A. Trinidad Roman of the Guaynabo Municipal Police and filed a complaint against the defendant for domestic violence, which had taken place on June 16, 1996. She warned that he was a violent armed individual. A warrant for the arrest of the defendant was then duly issued.

On June 19, 1996, at approximately 6:30 a.m., Agent Trinidad and around [2] eight to ten other police officers arrived at the defendant's residence in various cars, located in Barrio Frailes in Guaynabo, in order to execute the arrest warrant. The officers surrounded the residence while Agent Trinidad, accompanied by another agent, both with bullet proof vests, knocked on the defendant's door. When the defendant opened the door, Agent Trinidad told him that the police had a warrant for his arrest. Agent Trinidad testified that the defendant then:

> ran into the bedroom, opened a small door that leads inside the bedroom, pulls out a wooden panel. And behind this wooden panel came out what I was able to see since the beginning a rifle, which he tried to pick up and I pointed my weapon to him telling him not to, that if he did I was going to be forced to use my weapon.

Agent Trinidad then placed the defendant under arrest. After being advised of his *Miranda* warnings the defendant admitted to Agent Trinidad that he had ammunition in a "kind of storage house" in the surrounding patio area in two containers.

Agent Trinidad and the other officers then proceeded to search the vicinity of the defendant's residence and seized two containers containing ammunition. Inside the defendant's residence, behind the wooden wall panel from which the defendant had previously attempted to retrieve a weapon, the police seized numerous magazines and firearms, including pistols and assault weapons.

At the October 17, 1996, evidentiary hearing, the defendant presented the testimony of his cousin, Roberto Delgado Varcarcel, and two of the defendant's neighbors (Hector Gotay de Jesus and his son, Hector Manuel Gotay Catala), who are also friends of the defendant and his family. The testimony of the witnesses for the defendant differed substantially in certain material respects from the testimony of Agent Trinidad. For instance, Hector Gotay Catala testified that the defendant did not flee towards the inside his residence at the moment Agent Trinidad confronted him at the front door of the residence.

The testimony of each of the defense witnesses also differed materially from each other. For example, both Roberto Delgado and Hector Gotay Catala claimed to have been present inside the defendant's residence during the searches and at the moment that the weapons were found. However, Roberto Delgado testified that only he and Carlos Martinez were present during the searches, which is inconsistent with Hector Gotay Catala's claim of having been inside the residence during the seizure of the weapons.[3]

1. Defendant's Post-trial Brief was originally due on January 7, 1997, but was filed after obtaining an extension on January 29, 1997 (Docket No. 32); the Memorandum of the Government was originally due on the January 27, 1997, was filed on February 11, 1997 after an extension was granted (Docket No. 33 and marginal order therein).

2. Defendant's witnesses testify to the presence of ten or more policemen.

3. Héctor Gotay Catala also testified that, although he had been the subject of several searches by police during the days before the defendant's arrest, he had no animosity whatsoever towards the police. The Court finds that this testimony is not credible; this witness has a story motive to testify against the police.

Roberto Delgado further testified that Agent Trinidad made two telephone calls and that one of Agent Trinidad's searches of the defendant's residence took place in between his making of those two calls. The cellular telephone records of Carlos Martinez submitted by the defendant in his written submission[4] indicate that there was no time between the two telephone calls attributed to Agent Trinidad for a search to have been conducted. The pertinent telephone calls reflected on the telephone records are:

| Time | City | Number | Duration/Minutes |
|------|------|--------|------------------|
| 7:41 a.m | Trujillo Alto | 283–2012 | 2.1 |
| 7:43 a.m. | Guaynabo | 720–5040 | 1.0 |

The parties have agreed that telephone number 283–2012 is the residence of the defendant's mother-in-law, (where the defendant's wife had sought refuge from the defendant) and that telephone number 720–5040 is to the municipal police station in Guaynabo.

Sometime after the defendant's arrest, Agent Trinidad telephoned the defendant's wife and informed her that the defendant had been arrested and that some weapons had been seized. Agent Trinidad asked the defendant's wife if she would allow them to search the residence again and she stated that "there was no problem, that we could go back to the house." The police then made another inspection of the house but found no additional weapons.

On June 19, 1996, at approximately 4:40 p.m., the defendant signed a written statement admitting to his possession of firearms in his residence and other facts relating to those firearms.

The Court finds that the police officers were lawfully present on the defendant's property in order to execute a valid warrant

for his arrest. It is well-established that the scope of a search incident to an arrest is not limited to a defendant's person, but that police are also entitled to search the area within a defendant's immediate control. In *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), the Supreme Court construed "immediate control" to mean "the area from within which [the arrestee] might gain possession of a weapon or destructive device." *Id.* See also *United States v. Doward*, 41 F.3d 789 (1st Cir.1994).[5]

Whether the defendant attempted to retrieve a firearm incident to his arrest requires a credibility determination between the testimony of Agent Trinidad and that of Hector Gotay de Jesus and Hector Gotay Catala.[6] It is the role of the Court to make such credibility determinations. *See United States v. Blais*, 98 F.3d 647, 651 (1st Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1000, 136 L.Ed.2d 879 (1997); *United States v. Patrone*, 948 F.2d 813, 816 (1st Cir.1991), *cert. denied*, 504 U.S. 978, 112 S.Ct. 2953, 119 L.Ed.2d 575 (1992).

The Court finds the testimony of Agent Trinidad as to the events surrounding the defendant's arrest to be credible. Agent Trinidad testified that, while attempting to arrest the defendant, the defendant ran towards the inside of the residence and attempted to retrieve a weapon from behind a wooden wall panel. The Court finds that the testimony of Hector Gotay de Jesus and Hector Gotay Catala, that the defendant did not run into his house at the time of the arrest, is not credible and influenced by their close relationship to the defendant and his family and/or resentment against previous police interventions with Hector Gotay Cata-

4. Without any opposition from the United States.

5. Searches of the room where the arrest took place are permissible even after the arrestee has been removed from the room or otherwise immobilized. See *Davis v. Robbs*, 794 F.2d 1129, 1131 (6th Cir.) (search of room valid as incident to arrest even though arrestee had been placed in squad car before search), *cert. denied*, 479 U.S. 992, 107 S.Ct. 592, 93 L.Ed.2d 593 (1986); *United States v. Turner*, 926 F.2d 883, 887–88 (9th Cir.), *cert. denied*, 502 U.S. 830, 112 S.Ct. 103,

116 L.Ed.2d 73 (1991); *United States v. Lucas*, 898 F.2d 606, 609–10 (8th Cir.) (search of closed kitchen cabinet incident to arrest valid even though out of arrestee's reach because he reached for cabinet door during scuffle preceding arrest), *cert. denied*. 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990).

6. Because Roberto Delgado did not arrive at the scene until some time after the defendant had been arrested, he had no first hand knowledge as to the events surrounding the defendant's arrest.

la.[7] Accordingly, the search of the area behind the wooden panel, from which the defendant might have gained possession of a weapon, was justified as a lawful search incident to the defendant's arrest.

Further, Agent Trinidad testified that, as the defendant attempted to retrieve a weapon from behind the wooden panel, one of the weapons came into his view. Based upon Agent Trinidad's knowledge of the defendant's prior conviction and his resisting arrest, the incriminating nature of the firearm would have been immediately apparent. Moreover, Agent Trinidad was lawfully inside the defendant's residence as he was executing a valid arrest warrant. Therefore, the seizure of the weapons inside the defendant's residence was lawful pursuant to the "plain view" doctrine. See *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

In further support of the Court's credibility determination in favor of Agent Trinidad, the Court also finds that the testimony of Roberto Delgado was particularly not credible. Delgado's testimony that Agent Trinidad conducted a search of the residence during the time between Agent Trinidad's alleged placing of two telephone calls is directly contradicted by the telephone records themselves which show no time elapsing between the two phone calls. Further, Delgado's testimony indicating that Hector Gotay Catala was not inside the defendant's residence when the weapons were seized cannot be reconciled with Gotay Catala's testimony that he witnessed the seizure of the weapons. In this critical issue and others, defendants' witnesses trip over each others testimony.

The Court's credibility determinations are also based upon the Court's first-hand observations of each witness' demeanor and attitude while testifying during the lengthy evidentiary hearing and the biases of the defense witnesses.[8]

Lastly, because the seizure of weapons in the defendant's residence incident to his arrest was proper, the defendant's subsequent statement after being advised of his *Miranda* warnings is admissible and therefore not poisoned under the doctrine of "a fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

For the reasons set forth above, the defendant's Motion to Suppress is HEREBY DENIED.

**IT IS SO ORDERED.**

---

7. Their testimony also lacks credibility because it is not reasonable to believe that the police officers would have allowed the witnesses to remain close by at the very moment when a reportedly dangerous armed felon was being arrested. The arrest was precisely coordinated with several other policeman at a precise early hour because of the dangerousness of the person involved.

8. Even assuming, arguendo, that the Court had not believed the testimony of Agent Trinidad, the defendant's contention that Agent Trinidad was directed to the cache of weapons inside the residence by the defendant's wife after his arrest requires a denial of the defendant's motion to suppress on a separate ground. Consent to search is one of the exceptions which obviates the need for a warrant. *United States v. Donlin,* 982 F.2d 31, 33 (1st Cir.1992). Moreover, valid consent may be given by a defendant or a third party with "common authority" over the premises. *Id.,* citing *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Third party consent remains valid even when the defendant specifically objects to it. *Id.*

Where the Court to accept the defendant's version that the defendant's wife directed Agent Trinidad to the location of the weapons, then the Court would also have to find that the search of the residence and seizure of the weapons was lawful as it was based upon valid consent provided by the wife. However, because the Court believes the testimony of Agent Trinidad, a finding of third-party consent is superfluous to validate the search and seizures in question.