**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

FIDEL MEDINA-GALAVIZ and JORGE
ORTEGA,

       Defendants-Appellants.

Nos. 98-4007, 98-4014
(D.C. Nos. 97-CR-129-G,
97-CR-129-2)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

In these consolidated appeals, defendants Jorge Ortega and Fidel Medina-Galaviz

appeal from the denial of their motions to suppress. An officer of the Utah Highway

Patrol stopped Ortega and driver Medina-Galaviz at a checkpoint on I-70. After checking

defendants' identifications, the officer stated, "I would like to search the car." Medina-

Galaviz said "okay" and signed an English consent form. A search yielded cocaine,

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

methamphetamine, and marijuana. Defendants advance several purported Fourth Amendment violations. We affirm.

**I**

In April 1997, defendants Jorge Ortega and Fidel Medina-Galaviz were stopped on I-70 at an administrative traffic checkpoint conducted by the Utah Highway Patrol. The purpose of the checkpoint was to enforce both the traffic and criminal laws by, among other things, examining drivers' licenses and vehicle registrations. The checkpoint, which was purportedly approved by a judicial officer pursuant to Utah Code § 77-23-104, provided that every vehicle would be stopped at the roadblock, unless more than ten vehicles became backed up.

At the time of the stop, Medina-Galaviz was driving and Ortega was a passenger. The officer at the scene asked, in English, for Medina-Galaviz's driver's license and registration. Medina-Galaviz provided a Kansas identification card and a receipt from the Kansas Department of Revenue's Drivers License Bureau. The officer asked Medina-Galaviz to pull out of the flow of traffic to the emergency lane.

The officer then requested vehicle registration, which was provided. The Wisconsin registration card revealed that the vehicle was registered jointly to Ortega and Medina-Galaviz. The officer also asked Ortega if he had a driver's license. Ortega produced a non-photo temporary California driver's license. The officer took the

defendants' paperwork and walked to his vehicle to run computer inquiries. He discovered Medina-Galaviz did in fact have a valid Kansas driver's license. The officer returned to the defendants' car and returned all the documentation. Up to this point, the entire encounter had taken approximately five to ten minutes. The district court found that defendants "were then free to leave and were free not to respond to the officer's questions." There were no constraints to indicate the defendants were not free to leave. There were no other officers present, the officer never removed his gun from his holster, and there were no police vehicles or other impediments to restrict the defendants from driving away.

The officer next asked whether there were any guns or drugs in the vehicle. Medina-Galaviz answered no. The officer then stated, "I would like to search the car," to which Medina-Galaviz responded, "okay." The officer handed Medina-Galaviz a pre-printed, English-language consent-to-search form. The officer walked to the rear of the vehicle and gave Medina-Galaviz time to read the form. From the back of the car, the officer saw Medina-Galaviz turn the consent form over and look at its back. The defendant took what appeared to be the appropriate time to read the document. Medina-Galaviz then signed the form. The officer asked defendants to step out of the car and to stand in front of the vehicle. The search yielded approximately four kilograms of cocaine, three and one-half pounds of methamphetamine, and seven and one-half pounds of marijuana. Both defendants were arrested.

A grand jury returned a three-count indictment against the defendants, charging each with possession of a controlled substance with intent to distribute. Both defendants filed motions to suppress, which the district court consolidated and denied after holding two separate evidentiary hearings. Defendants entered conditional guilty pleas and timely appealed.

## II

Defendants first argue the initial stop at the checkpoint violated the Fourth Amendment because the approval of the checkpoint plan did not comply with Utah State Code § 77-23-104. We review the district court's findings of fact for clear error and review de novo the ultimate reasonableness of a seizure under the Fourth Amendment. *United States v. Butler*, 904 F.2d 1482, 1484 (10th Cir. 1990).

Section 77-23-104 requires an independent judicial determination that the checkpoint plan comports with certain requirements. Among other things, a magistrate must "sign the authorization and issue it to the command level officer, retaining a copy for the court's file." Defendants assert the police failed to obtain proper judicial approval because a precinct judge, not a "magistrate," signed the application, and the plan was not kept on file with the court. Essentially, defendants "submit that all Courts should require strict compliance with the [application procedure of the] Utah Statute before finding an exception to the Fourth Amendment."

Defendants have not provided, nor could we find, any authority for the proposition that failure to comply with state law application requirements triggers a Fourth Amendment violation. In fact, the law is to the contrary. *See United States v. Mitchell*, 783 F.2d 971, 973 (10th Cir. 1986) (purported violations of state warrant statute are irrelevant to determination of whether exclusion proper under Fourth Amendment to U.S. Constitution); *United States v. Delaporte*, 42 F.3d 1118, 1119 (7th Cir. 1994) ("State officers do not by violating state law violate the federal Constitution."); *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) ("The federal inquiry [does not turn] on whether a state officer violated state law in securing probative evidence."); *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir. 1993) ("In determining the reach of the Fourth Amendment, it is well-established that federal law controls."); *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991) ("Evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law*."); *United States v. Little*, 753 F.2d 1420, 1434 (9th Cir. 1984) (same). Accordingly, defendants' argument is without merit.

We also reject defendants' other arguments relating to the initial stop. We have already held on numerous occasions that "a brief stop at a highway roadblock for the limited purpose of verifying a driver's license, registration, and proof of insurance is a reasonable intrusion into the lives of drivers and their passengers even in the absence of reasonable suspicion that an individual passenger or motorist is engaged in illegal

activity." ***United States v. Galindo-Gonzales***, 142 F.3d 1217, 1221 (10th Cir. 1998); *see also* ***United States v. Morales-Zamora***, 914 F.2d 200, 202-03 (10th Cir. 1990) (citing cases).

## III

Defendants next argue that even if the initial stop and questioning was permissible, the continued restraint after the officer returned their identification cards violated the Fourth Amendment. Specifically, they argue that in order to detain them for the purpose of investigating matters other than licensing and vehicle registration, the officer was required to have had reasonable suspicion[1] to believe they were engaged in illegal activity. Because no reasonable suspicion existed, the argument goes, the remaining detention violated the Fourth Amendment.

A police officer may further question and detain a driver after an initial stop if either (1) during the course of the initial traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity *or* where (2) the driver voluntarily consents to the officer's additional questioning. ***United States v. Sandoval***, 29 F.3d 537, 540 (10th Cir. 1994). "In the first situation a Fourth Amendment seizure has taken place, but it is reasonable and consequently constitutional. In the

[1]Medina-Galaviz argues the standard is reasonable suspicion; Ortega argues the standard is probable cause. Reasonable suspicion is clearly the applicable standard. ***United States v. Galindo-Gonzales***, 142 F.3d 1217, 1221-22 (10th Cir. 1998).

- 6 -

second there is no seizure, and hence the Fourth Amendment's strictures are not implicated." *Id.*; *see also* **United States v. Hernandez**, 93 F.3d 1493, 1498 (10th Cir. 1996).

We first note that defendants' argument, which attacks the first basis for further questioning and detention, demolishes a position no one holds. The district court did not conclude, and the government does not contend, that the officer had reasonable suspicion to believe defendants were engaged in illegal activity. Rather, the district court found, and the government argues again on appeal, that when the officer returned the license and registration, the investigatory detention terminated and became a consensual, police-citizen encounter, not implicating the Fourth Amendment. Defendants argument is thus misplaced.

Defendants have failed to challenge the district court's finding that the detention transformed into a consensual encounter not implicating the Constitution. Defendants failure to advance *any* argument on or to even mention this issue waives the argument on appeal. We are "not required to manufacture a party's argument on appeal when it has failed in its burden to draw our attention to the error below." **National Commodity & Barter Ass'n v. Gibbs**, 886 F.2d 1240, 1244 (10th Cir. 1989); *see also* **Hernandez v. Starbuck**, 69 F.3d 1089, 1093 (10th Cir. 1995). In any event, any challenge to the district court's finding of a consensual encounter would be without merit. *See* **United States v. Elliott**, 107 F.3d 810 (10th Cir. 1997) (concluding on near-identical facts that defendant

had voluntarily consented to additional questioning by a police officer during a routine traffic stop); *United States v. Werking*, 915 F.2d 1404 (10th Cir. 1990) (same).

## IV

Lastly, defendants challenge the validity of the consent to search the vehicle. Both defendants claim Medina-Galaviz's consent was involuntarily given. In addition, Ortega argues that Medina-Galaviz's "third-party" consent was inapplicable to him. Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. *Werking*, 915 F.2d at 1409.

## A

Both defendants claim Medina-Galaviz's consent was involuntary because Medina-Galaviz could not speak English and thus could not read the English consent form, and because the manner in which the officer asked for consent, "I would like to search the car," was more a demand than a question.

To find consent, the district court must find from the totality of the circumstances that (1) the consent was voluntary, and (2) the search did not exceed the scope of the consent. *United States v. Price*, 925 F.2d 1268, 1270 (10th Cir. 1991). "By clear and positive testimony, the court must find that the consent was 'unequivocal and specific' and 'freely and intelligently' given, and the government must prove that consent was

given without duress or coercion." ***United States v. Lowe***, 999 F.2d 448, 451 (10th Cir. 1993).

We have considered the totality of the circumstances and cannot conclude that the district court clearly erred when it found voluntary consent. Throughout the stop and questioning, the communications between the officer and Medina-Galaviz were all in English, and the defendant responded as one who speaks English would be expected to respond. For example, when the officer stated, "I would like to search the car," Medina-Galaviz responded, "okay." And according to the officer, Medina-Galaviz appeared to read the English consent form front and back. Neither defendant indicated that he could not understand the language. Medina-Galaviz's response to "I would like to search the car" also belies his contention that the officer's statement was a demand. Medina-Galaviz treated the statement as a request and he consented. The district court found the officer's testimony on these matters "to be believable and credible." The trial court also found that there was "no evidence the [officer] engaged in physical conduct, displayed a weapon, made any threats, or conducted psychological coercion. Furthermore, defendants did not attempt in any way to withdraw consent, or object to the search." Defendants have not pointed to, nor could we find, any evidence in the record to the contrary.

**B**

- 9 -

Ortega asserts, in the alternative, that Medina-Galaviz's "third-party" consent to search is not applicable to him because, as co-registrant of the vehicle, he (Ortega) should have been afforded an opportunity to consent or refuse to consent. Ortega's contention fails for two reasons.

First, he has failed to offer any argument on the issue. Counsel simply states that "Ortega [had] an opportunity and was not even questioned concerning the consent to search, even though his name appeared as an owner of the vehicle. The highway patrol trooper indicated that he had that knowledge and never considered his consent before searching the vehicle." Ortega's failure to cite a single case or tie the relevant facts to his legal contentions waives the argument on appeal. *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir.), *cert. denied*, 118 S. Ct. 132 (1997); *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995).

Second, it is well settled that another person, other than a defendant, can consent to a search of a defendant's premises or effects if that other person "possess[es] common authority over" the premises or effects. *United States v. Matlock*, 98 S. Ct. 988, 993 (1974); *see also* *United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1230 (10th Cir. ), *cert. denied*, 119 S. Ct. 230 (1998). The evidence demonstrates, and the defendants do not dispute, that both Medina-Galaviz and Ortega were listed as registered owners of the vehicle. The fact that Medina-Galaviz was asked for consent and Ortega was not, thus does not invalidate the consent to search the vehicle. Furthermore, even if the officer had

also asked Ortega for consent, and Ortega had declined to give it, Medina-Galaviz's consent would still be valid, even over Ortega's objections. ***United States v. Morning***, 64 F.3d 531, 536 (9th Cir. 1995); ***Lenz v. Winsburn***, 51 F.3d 1540, 1548 (11th Cir. 1995); ***United States v. Donlin***, 982 F.2d 31, 33 (1st Cir. 1992); ***United States v. Morales***, 861 F.2d 396, 400 n.9 (3d Cir. 1988); ***United States v. Baldwin***, 644 F.2d 381, 383 (5th Cir. 1981); ***United States v. Hendrix***, 595 F.2d 883, 885 (D.C. Cir. 1979); ***United States v. Sumlin***, 567 F.2d 684, 687 (6th Cir. 1977). Defendants possess common authority over the vehicle, and therefore, each defendant assumes the risk that the other might consent to a search.

**AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge